412 So.2d 685 (1982)
Randy W. SMITH, Individually and as Natural Tutor of the Minor Children, Angela Smith and Randall D. Smith, Janice G. Smith and Eddie L. Smith, Individually and as Natural Tutor of the Minor Children, Kevin L. Smith and Lorie Ann Smith, Plaintiffs-Appellees,
v.
STATE of Louisiana, Through DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT and Irris F. D. Austin, Defendants-Appellants.
No. 14800.
Court of Appeal of Louisiana, Second Circuit.
March 2, 1982.
Writ Denied April 30, 1982.
*686 Theus, Grisham, Davis & Leigh by J. Michael Hart, Monroe, Bobby Culpepper, Jonesboro, for plaintiffs-appellees.
R. Randall Roche, Baton Rouge, for defendants-appellants.
Before HALL, JASPER E. JONES and NORRIS, JJ.
JASPER E. JONES, Judge.
This tort action arose out of a serious automobile accident that occurred April 28, 1979 in Jackson Parish. The plaintiffs are Randy W. Smith, individually and as tutor of his minor children, Angela and Randall D.; Janice Smith, Randy's wife; and Eddie Smith, individually and as tutor of his minor children, Lorie Ann and Kevin. The defendants are the State of Louisiana through the Department of Transportation and Development (Department) and Irris F. D. Austin (Austin). The Department made a third party demand against Austin. The Department appeals a judgment holding it liable, in solido, with Austin for the extensive damages suffered by the plaintiffs. Austin has not appealed.
*687 Late on a Saturday afternoon, Randy W., Angela, Janice, Randall D., Kevin and Lorie Ann Smith were returning home from visiting relatives. They were traveling north on Louisiana Highway 34 in a Ford automobile driven by Randy W.
Austin was driving a Plymouth automobile south on Highway 34. He had departed from Eros, Louisiana where he had spent a good deal of the afternoon at the Eight Ball Cafe drinking beer. Austin drove his 1967 Plymouth from Eros to Chatham without incident.
From Chatham to the Winn Parish line, a distance of about twelve miles, Highway 34 traverses hilly terrain and has many curves. The section of the highway from Chatham to Winn Parish is heavily used by large trucks coming to and from a mill located at Chatham.
Austin continued on Highway 34 through Chatham, still traveling in a southerly direction. Slightly more than one mile south of Chatham, Austin drove his car partially onto the right shoulder of the highway. Apparently Austin pulled over when he met a northbound car at the crest of a hill.
Austin continued down the hill for a short distance with his right wheels on the shoulder before attempting to pull his car back completely onto the surface of the roadway. When Austin attempted this maneuver his vehicle went out of control in a counter clockwise spin and into the northbound lane of the highway where it struck the Smith vehicle.
Austin testified that at the time of the accident he had been going between 50 and 60 mph. Trooper Michael Taylor of the Louisiana State Police, who investigated the accident, estimated Austin's speed at 80 mph. An expert witness for the Department estimated Austin's speed at in excess of 80 mph. Blood tests taken after the accident showed that Austin had a blood alcohol content of .278 gm%.
The plaintiffs contend that Austin lost control of his vehicle because of the poor condition of the highway shoulder. The Department contends that Austin lost control because of his excessive speed and intoxication.
After a trial on the merits, the trial judge rendered a judgment against both defendants, in solido. The trial judge found the Department liable on grounds of both negligence and strict liability. The Department then took this appeal. We affirm.
The Department urges four specifications of error on appeal: (1) That the trial court erred in finding the condition of the highway was a proximate cause of the accident and in failing to find that the negligence of Austin was the sole, proximate cause of the accident, (2) That the trial court erred in improperly applying the law with regard to the negligence and liability of the Department, (3) That the trial court erred by holding the Department liable in the absence of proof that the condition of the highway caused the accident, and (4) That the trial court erred by awarding excessive damages.
SPECIFICATIONS NOS. 1 and 3
As both of these specifications of error relate to the trial court's finding that the condition of the highway was a cause of the accident, we consider them together.
The plaintiffs must prove causation by a preponderance of the evidence, but, they may carry that burden by either direct or circumstantial evidence. Townsend v. State, Department of Highways, 322 So.2d 139 (La.1975). Causation is a question of fact as to which the trial court's determinations are entitled to great weight and cannot be disturbed absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The shoulders of Hwy. 34 in the area where the accident occurred vary in width. At the crest of the hill where Austin's wheels left the road the shoulder was fairly wide, but it grew narrower as the road went down the hill where it dropped away into a ditch that was from four to five feet deep.
The highway in this area had a drop off from the surface of the roadway to the surface of the shoulder. To put it simply, *688 the shoulder was lower than the surface of the road. We will refer to this condition as an edge drop off. The edge drop off was several inches throughout the area, except in short areas where the shoulder had been patched.
With reference to the particular point where the Austin vehicle regained the road, Trooper Taylor testified:
"Okay, the drop off the roadway onto the shoulder, I observed it to be worn down pretty good. The shoulder was worn down in that area and it was several inches off. It dropped off pretty good from the paved portion on to the shoulder itself." [emphasis supplied]. Rec. p. 101.
Photographs of the scene taken by Taylor at the time of his investigation depict the general edge drop off that existed in the area of the accident.
Taylor again visited the scene in April, 1980, approximately one year after the accident, and found it to be in substantially the same condition that it had been at the time of the accident. Measurements taken on the second visit showed the edge drop off to vary between 2½ and 4" at the scene with the depth of the drop off generally increasing as it moved down from the crest of the hill.
Taylor testified that on the day of the accident he observed "buff marks" made by the Austin vehicle's tires when Austin had tried to steer it over the edge drop off and back onto the roadway surface.
Both the plaintiffs and the Department used expert testimony to show the effect of an edge drop off on a driver reentering the paved surface of the road from the shoulder.
Mr. Sylvanus Walker, Consulting Engineer, testified for plaintiff and stated that an edge drop off presents a hazard to motorists. Walker explained that the edge drop off presents an obstacle to a motorist trying to come back on to the road from the shoulder because the tires cannot move smoothly onto the road surface from the shoulder. Before the tires regain the roadway they must overcome and climb the edge drop off. In order to cause the tires to do this the driver must steer hard back onto the roadway. The application of the steering force necessary to overcome the edge drop off often results in the car being oversteered as it re-enters the road. The oversteer, if serious enough, can cause the vehicle to go out of control into a counter clockwise spin.
Walker also opined that the typical problem with an edge drop off was compounded at this location by the fact that the shoulder was narrow and dropped away into a deep ditch. Walker felt that the narrow shoulder created an additional stimulus to cause the driver to try to regain the roadway surface.
Walker was of the opinion that an edge drop off of 2½" to 4" was enough to create the problem detailed above. Walker was also of the opinion that the problem would be encountered by vehicles traveling as slow as 45 mph.
Mr. Dewayne T. Evans, an engineer with extensive experience in traffic engineering, testified for plaintiff. Evans felt that any edge drop off of over 2" would constitute a hazard to motorists. Evans agreed with Walker that the hazard resulted from the danger of oversteering. Evans also agreed that the problem was aggravated by the narrow width of the shoulder at the accident scene. Evans was of the opinion that the edge drop off present in this case would be a hazard at speeds as low as 40 mph.
The Department's expert witness, Mr. Don Ivey, an Engineer, testified by deposition. Ivey opined that Austin lost control due to steering over correction caused by his intoxication and excessive speed. Ivey also was of the opinion that an edge drop off of less than 4" was not a hazard unless the vehicle was being driven at an excessive rate of speed.
The evidence supports the trial judge's conclusion that there was an edge drop off of at least 2" at the accident scene. The evidence, and particularly three facts, support the trial judge's conclusion that the edge drop off caused Austin to lose control. First, Austin did not lose control until he *689 attempted to get his car's right wheels back on the highway. Second, Trooper Taylor found "buff marks" made by the tires on the edge drop off as Austin tried to steer back onto the highway. Third, when the Austin vehicle went out of control it went into a counter clockwise spin. These facts all are strongly consistent with an edge drop off oversteer accident and corroborates Austin's testimony that the edge drop off caused him to lose control.
In its brief the Department makes much of the fact that Trooper Taylor did not indicate on his accident report that the shoulder condition was a cause of the accident. This is explained by Taylor's testimony, however. Taylor testified that he would not consider a shoulder defective unless it was in a serious state of disrepair or had a glaring or obvious defect.
The evidence shows that the edge drop off was an important and substantial cause of Austin's loss of control and the subsequent collision with the Smith vehicle. These specifications of error are without merit.
SPECIFICATION NO. 2
Appellant's second specification of error is that the trial judge erroneously applied the law with regard to the negligence and liability of the Department. The trial judge found the Department liable on grounds of both negligence and strict liability. We will first consider the application of strict liability to these facts.
The plaintiffs may recover on the basis of strict liability under LSA-C.C. art. 2317[1] by showing (1) that the thing was in the care or custody of the defendant, (2) that it had a vice or defect, that is some condition which occasioned an unreasonable risk of injury, and (3) that the injury was caused by the defect. Jones v. City of Baton Rouge, Etc., 388 So.2d 737 (La.1980).
As we have already concluded that one cause of the accident was the shoulder condition, we now need only consider whether Hwy. 34 was in the care or custody of the Department and whether the condition of the shoulder amounted to a defect.
The shoulder is a part of the highway. LSA-R.S. 48:1(11 & 21). Hwy. 34 is a state highway, LSA-R.S. 48:191, and as such it is in the care and custody of the Department. Foggan v. La. Dept. of Transp. and Dev., 402 So.2d 154 (La.App. 1st Cir. 1981). Thus, Hwy. 34, including the shoulder, was in the care or custody of the Department.
We must now decide whether the shoulder of Hwy. 34 was a vice or defect. There are numerous cases in which our courts have allowed recovery because of shoulder irregularities. See e.g. Watson v. Morrison, 340 So.2d 588 (La.App. 1st Cir. 1976), writ denied 342 So.2d 218 (La.1977); Brandon v. State Through Dept. of Highways, 367 So.2d 137 (La.App. 2d Cir. 1979); writ denied 369 So.2d 141 (La.1979); Rue v. State, Department of Highways, 372 So.2d 1197 (La.1979); Brown v. Louisiana Dept. of Highways, 373 So.2d 605 (La.App. 3d Cir. 1979), writ denied 376 So.2d 1269 (La.1979); Sinitiere v. Lavergne, 391 So.2d 821 (La. 1980); Sibley v. Menard, 398 So.2d 590 (La. App. 1st Cir. 1980), writ denied 400 So.2d 211 (La.1981). A 3½" to 4" drop off was held to be a defect in Sinitiere, supra. A 3" edge drop off due to overlay work has been held to be a defect under Art. 2317; Edwards v. State, Dept. of Transp. & Devel., 403 So.2d 109 (La.App. 3d Cir. 1981), though recovery was not allowed because of victim fault.
The record shows that edge drop offs cause a grave danger of loss of control even to drivers proceeding at moderate speeds. Further, the problem was compounded here by additional difficulties caused by the narrowness of the shoulder and the 4' to 5' deep ditch in the area of Austin's re-entry. We conclude that the condition of the shoulder of Hwy. 34 was a vice or defect in the highway.
*690 We find that the trial judge correctly found the Department to be liable under Art. 2317 since the highway was in the care and custody of the Department. The shoulder of the highway posed such a danger to motorists that it was a vice or defect in the highway and the defective shoulder was a substantial cause of the plaintiffs' injuries.
We now consider whether the Department may also be held liable on grounds of negligence.
The Department may be held liable based on negligence when it has actual or constructive notice of a hazard condition and fails to take corrective action within a reasonable time. Sinitiere, supra. The Department has a duty to see that the highways are reasonably safe for persons exercising ordinary care and reasonable prudence. LaBorde v. Louisiana Department of Highways, 300 So.2d 579 (La.App. 3d Cir. 1974). The Department has a duty to inspect and maintain the shoulders of the highways. Willis v. State ex rel. Louisiana Dept. of Highways, 321 So.2d 819 (La.App. 1st Cir. 1975); Watson; Brandon; Rue; supra. The duty to maintain safe highways, including shoulders, extends to persons in other vehicles who are likely to be injured when another vehicle goes out of control because of a negligently maintained shoulder. Sinitiere, supra.
For the reasons previously mentioned in connection with our finding that the shoulder constituted a vice or defect in the highway, we conclude that it also constituted a hazardous condition. The question now becomes did the Department have actual or constructive notice of the condition and fail to take corrective action within a reasonable time.
Our review of the photographs taken by Trooper Taylor on the date of the accident of the shoulder of the road at the accident scene, reveal that they contain no indication that the edge drop off, which was a contributing cause of the accident, came into being only a short time before the accident occurred. On the contrary the pictures would indicate that the condition was of long-standing. Trooper Taylor testified that he inspected the accident scene in April, 1980, about one year after the accident, and the condition of the edge drop off reflected in the pictures remained unchanged during this period of time.
Rogers, the Department's Jackson Parish Maintenance Superintendent, testified that he performed a weekly inspection on La. Hwy. 34, including the area of the accident site. He testified he made the inspection by driving his automobile over the road. He acknowledged that he did not do any edge drop off maintenance until the drop off reached a depth of 4", although Department regulations required drop off maintenance when the drop off exceeded 1". He did not know the depth of the drop off at the accident scene on the date it occurred. The edge drop off reflected in the pictures are so apparent there is no reason why Rogers should not have observed them during his weekly maintenance inspection tour. Rogers knew that Hwy. 34 was plagued with edge drop off problems and knew that traffic like that on Hwy. 34 increased shoulder problems. There had been other shoulder related accidents in the months preceding the present accident. However, despite these facts no shoulder maintenance was performed on Hwy. 34 from October, 1978 until the accident.
While there is no direct testimony that the edge drop off at the accident scene existed for a substantial period of time before the accident, we conclude the pictures taken on the date of the accident, along with Trooper Taylor's testimony, together with the other circumstances mentioned, provide substantial support for the trial judge's conclusion that the Department had actual or constructive knowledge of the defect and was liable under the negligence theory.
This specification of error is without merit.
SPECIFICATION NO. 4
We now turn to appellant's final specification of error: that the trial judge erred by awarding excessive damages. The Department did not address this assignment *691 in oral argument and in its brief it contests only the award of general damages to Randy W. Smith for his own injuries and the award of damages to Eddie Smith for his son, Kevin.
The trial judge awarded $125,000 to Randy W. Smith for his personal injuries and disability. The Department contends that an award of $84,000 would be more appropriate and cites Parker v. South La. Contractors, Inc., 370 So.2d 1310 (La.App. 1st Cir. 1979).
The trial judge awarded $600,000 for Kevin Smith's pain, suffering and permanent physical disability, and $600,000 for his loss of earning capacity. The Department suggests that an award of $500,000 would be more appropriate and cites Carollo v. Wilson, 353 So.2d 249 (La.1977).
The excessiveness of a damage award is determined by the peculiar facts and circumstances of the particular case; only if the award is clearly excessive on the record may we look to other cases to determine the highest award which would not be an abuse of discretion. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Carollo, supra. The record fully justifies the awards which the Department characterizes as excessive.
Randy W. Smith suffered the following injuries: fractured ribs, a fractured eye socket, a fractured jaw, a fractured femur, and lacerations to his left elbow. Smith's jaw had to be wired shut and he was in traction for eight weeks for treatment of his injuries. Due to the leg injuries Smith's left leg is now ¾" shorter than his right, there is a 50% chance he will develop arthritis in his knee and a lesser possibility that the knee will require surgical replacement. These injuries and their treatment, including surgery, caused Smith much pain and at the time of the trial he still experienced pain and discomfort from walking. His treating orthopedic estimated he had 50% disability to perform work which required climbing and his offshore job that he had at the time of the accident required climbing. This doctor also testified he had 15 to 20% permanent disability as related to his leg injury.
Kevin Smith suffered contusions and damage to the brain and brain stem, a basal skull fracture, a fractured femur, clonus, spasticity, aspiration pneumonia and rigidity of his body as a result of the accident. Kevin's injuries were so severe that Kevin almost certainly would have perished at the accident scene but for the quick and skillful administration of life saving techniques by Trooper Taylor.
Kevin's left leg is now ½ shorter than his right and his use of his right arm and hand is so impaired that he now uses his left hand as his dominant hand. Kevin, who was five at the time of the accident, was hospitalized for 62 days, the first 10 in intensive care. Kevin's leg injury required surgery. The period of treatment and recovery of the child was marked by extensive pain.
By far the most unfortunate aspect of this tragic case is the effect the brain injuries have had on young Kevin. He has been left with an I.Q. of 69 which is insufficient to allow him to complete even a high school education. Further, the injuries have produced a severe personality change. The formerly quiet and reserved child is now outgoing, talkative and hyperactive.
The physical injuries resulted in the child being permanently totally disabled to perform manual labor. The mental impairment is so severe that he is incapable of acquiring even a high school education. These combined circumstances establish that Kevin will be able to earn little, if any, income during his lifetime. The award for loss of earning capacity compensates only for what he would have earned if employed at slightly more than minimum wage.
There was no abuse of discretion in the awards to Randy W. Smith or to Eddie Smith for Kevin.
This specification of error is without merit.
The judgment appealed from is AFFIRMED and all costs are taxed against appellant.
NOTES
[1] C.C. art. 2317: We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.