421 So.2d 1151 (1982)
Peggy W. CAUSEY, Plaintiff-Appellee,
v.
Billy Jack MONROE, et al., Defendant-Appellant.
No. 15002.
Court of Appeal of Louisiana, Second Circuit.
October 25, 1982.
Rehearing Denied December 9, 1982.
Writ Denied February 4, 1983.
Lawrence K. McCollum, Shreveport, for plaintiff-appellee.
Mayer, Smith & Roberts by Alex F. Smith, Jr., Shreveport, for defendant-appellant.
Before PRICE, MARVIN and JASPER E. JONES, JJ.
JASPER E. JONES, Judge.
This personal injury case was tried only on the issue of quantum. The district judge rendered judgment for plaintiff, Peggy W. Causey, in the amount of $185,935.79, for past and future pain and suffering, disability, emotional damage and special damages. The defendant, plaintiff's uninsured motorist carrier, Continental Casualty Company, appeals. We affirm.
Continental sets out one assignment of error: that the trial judge erred in awarding grossly excessive damages. Continental contends that the award of general damages should be reduced from $180,000.00 to no more than $18,000.00.
In support of its assignment of error Continental makes two arguments: (1) that the award includes some damages not caused by the accident; and (2) that the award is grossly excessive in light of the injuries.
Mrs. Causey is a schoolteacher. She is very intelligent and was 43 at the time of the accident. Before the accident plaintiff was a happy person and a sports enthusiast who greatly enjoyed activities such as tennis, badminton, basketball, Ping-Pong and water skiing. The lives of plaintiff, her *1152 husband and their two sons were built around family sporting activities.
Plaintiff was an excellent housekeeper before the accident. She also did yard work, including mowing and gardening, around her home.
Plaintiff was injured in an auto accident on April 27, 1979. The accident occurred when the car in which plaintiff was a passenger attempted to avoid a head-on collision, left the road and struck a culvert and was then struck by the other vehicle.
In the accident plaintiff suffered a compression fracture of the 4th lumbar vertebra. At the time of the trial she was diagnosed as suffering from residual effects from the healed compression fracture, chronic myoligamentous back strain, cervical disc syndrome, cervical myositis, ulnar neuritis and depression. Due to these conditions plaintiff has a permanent disability of 25%.
Since the accident plaintiff has lived in constant pain. She cannot engage in sports. She cannot do any yard work and can perform only light housework. She is often depressed and frequently cries.
Continental argues that the award should not include damages associated with plaintiff's cervical problem, which was not reported to her physician until September 30, 1980, because she has not sufficiently proved it was caused by the accident of April 27, 1979. Continental contends that there has not been adequate proof of causation in light of the long delay in reporting the problem to the doctor.
In his excellent written reasons for judgment the trial judge noted the long delay in reporting the cervical problem. However, he also noted that this was consistent with plaintiff's stoic nature and specifically found that plaintiff's cervical injuries were caused by the accident.
The trial judge's findings of causation are factual conclusions which we may not disturb absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Smith v. State, Through Dept. of Transp., Etc., 412 So.2d 685 (La.App. 2d Cir.1982).
The trial judge's conclusions as to causation are strongly supported by the testimony of plaintiff's treating physician, Dr. William Bundrick, an orthopedist.[1] Plaintiff testified she commenced having neck discomfort within a few days following the accident and this condition increased in frequency and intensity until September, 1980, when she could no longer endure the pain without obtaining medical treatment. Members of plaintiff's family, her co-workers and friends all corroborated plaintiff's testimony that she was having substantial neck discomfort long before she sought treatment for this condition in September of 1980. In view of this substantial evidence we find no error in the trial judge's conclusion that the accident of April 27, 1979, caused plaintiff's cervical injuries.
We now turn to Continental's contention that the award is grossly excessive in light of the injuries. Continental argues that plaintiff's injuries are not severe enough to warrant this award because of the relatively small number of doctor visits and drugs used in their treatment. Appellant further contends that because plaintiff returned to work ten days after the accident and thereafter missed work only for seven days while hospitalized for her neck injury in October, 1980, her injuries do not justify the award she received.
The trial judge found that "[E]ven at the trial of this case it was noted that plaintiff was not prone to exaggerate or overstate her complaints or symptoms." Numerous witnesses, including Dr. Bundrick, described plaintiff as a person who does not complain. *1153 Included within the trial judge's reasons for judgment were the following findings of fact: (A) "... that plaintiff has suffered pain at home and at school under conditions when others would have been in the hospital and would have been unable to report for work." and (B) "Plaintiff now experiences pain on sitting, standing, bending and on any type of strenuous activity. She cannot do her normal and customary housework chores, because she is now only able to do light household activities and dusting. She cannot lift, cannot grocery shop and lift groceries or stand in line. Plaintiff has difficulty teaching because she cannot move around the classroom or bend over students or lift books, and she cannot stand for long periods or sit for long periods without pain. She suffers constant pain in the low back and shoulders in addition to her left hand and fingers. She has continued teaching only because she felt that it was financially necessary for her to do so." These conclusions are strongly supported, if not compelled, by the record.
We attach no significance to plaintiff's failure to make more visits to the doctor, nor that she did not have numerous extensive absenses from her work. It is apparent that this lady is a strong woman with unusual physical and mental tenacity and she was bravely attempting to get back to the business of living her life, as best she could, with her permanent, painful injuries.
We now consider whether the trial judge's award for these particular injuries and their effect on this particular plaintiff represents a clear abuse of his much discretion. Reck v. Stevens, 373 So.2d 498 (La. 1979). We conclude that the trial judge did not abuse his discretion.
Plaintiff was injured when the car in which she was a passenger struck a culvert and collided with another car. The force of the collision hurled her from the seat and caused her back to hit the dashboard with such force that it crushed the glove compartment. After the accident plaintiff was conscious and in extreme pain. She remained in the car for 45 minutes until an ambulance arrived.
Plaintiff was then taken to the emergency room of the Bossier General Hospital where her condition was diagnosed as only severe bruising. Plaintiff was given a prescription for pain medication and released. Plaintiff required assistance to get off the examining table at the hospital and into bed when she got home.
Plaintiff remained at home in bed for nine days following the accident. She could not take the prescribed pain medication because it contained codeine to which she is allergic. Instead, she took extra-strength Tylenol but got no noticeable relief from her constant pain.
Despite the pain plaintiff felt it was necessary for her to return to work as a teacher. After returning to school plaintiff continued to suffer severe pain and concluded that the initial diagnosis of her condition must have been incorrect. She then made an appointment to see Dr. Bundrick.
Plaintiff first saw Dr. Bundrick May 8, 1979. He examined plaintiff and found severe spasm in the muscles of her lower back. An x-ray revealed a compression fracture of the 4th lumbar vertebra. Dr. Bundrick also diagnosed plaintiff as having suffered an acute myoligamentous strain. He prescribed a lumbosacral corset, muscle relaxants and analgesics.
By August 24, 1979, the compression fracture had healed but Dr. Bundrick diagnosed the myoligamentous strain as chronic. He felt that plaintiff suffered a permanent disability of 15% because of her back injury. Dr. Bundrick was of the opinion that plaintiff would suffer pain from prolonged sitting or standing and that she should avoid lifting, bending, stooping and strenuous activities.
On September 30, 1980, plaintiff returned to Dr. Bundrick complaining of pain in the left side of her neck and extending down into her left arm. X-rays revealed a narrowing of the C5-6 disc space with early degenerative changes. Dr. Bundrick diagnosed a cervical disc syndrome and cervical myositis and treated plaintiff with injections of xylocaine and cortisone and gave *1154 plaintiff prescriptions for analgesics and muscle relaxants.
Due to increasing neck pain plaintiff was hospitalized from October 3 to October 10, 1980. While hospitalized plaintiff developed ulnar neuritis in her left arm.[2] This condition causes pain in plaintiff's left arm and hand and a clawing of the 4th and 5th fingers of her left hand.
Dr. Bundrick examined plaintiff on May 26, 1981. At that time he considered her various physical problems permanent. Due to their cumulative effect he considered plaintiff to have a 25% permanent disability. He opined she would permanently have pain and advised that she avoid lifting, bending, stooping and strenuous activities.
Plaintiff was also examined by Milton Rosenzweig, a clinical psychologist. He found her to be suffering from a mild to moderate elevation of anxiety and depression. He was of the opinion that plaintiff should seek counseling in order to avoid greater emotional problems.
Plaintiff presented testimony from several witnesses as to the changes in her personality. She was shown to have become sad and depressed since the accident. She frequently cries now. She has changed from being a leader and organizer of activities such as cookouts and shopping trips with friends, to being a reluctant, limited participant in such events.
The pain from her injuries prevents plaintiff from engaging in activities such as tennis, water skiing and other sports. Pain limits plaintiff to doing only light housework and she can no longer do yard work at all. Because of financial necessity plaintiff continues to teach school even though she frequently suffers pain in performing her necessary classroom duties.
The physical and emotional injuries suffered by this plaintiff would greatly damage anyone. However, they were particularly damaging to plaintiff because of her lifelong emphasis on sports and outdoor activities. As a result, these injuries have destroyed a very important element of plaintiff's life.
In light of these injuries and their effect on this plaintiff there was no abuse of discretion by the trial judge in making this award. The judgment of the district court is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] Q. "Would you say more likely than not, with her previous health being excellent, no problems with the neck, and no intervening injuries, that this [the accident of April 20, 1979] would be the cause of her neck problems?"

A. "I would say more likely than not it would be, because this causes injury to the disc tissue." Rec. p. 212.
[2] Dr. Bundrick explained that ulnar neuritis is damage to or scarring of the ulnar nerve. Here it was caused by plaintiff's attempts to move without using her painful back by propping upon her elbows.