457 So.2d 300 (1984)
Kenneth LELEUX, Plaintiff-Appellant,
v.
The HOME INDEMNITY COMPANY, World Wide Oil Tool, Inc. a Subsidiary of Gator Hawk, Inc. & Donald Wayne Turner, Defendants-Appellees.
No. 83-934.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1984.
*301 William J.F. Gearheard, Lafayette, for plaintiff-appellant.
Jeansonne, Briney & Goudelocke, Patrick J. Briney, Lafayette, for defendants-appellees.
Before FORET, STOKER and KNOLL, JJ.
KNOLL, Judge.
Kenneth Leleux brings this appeal contending a jury award of $5,000 for personal injuries was inadequate. We affirm, finding the jury did not abuse its wide discretion in determining a damage award.
Leleux filed suit against World Wide Oil Tool, Inc., its employee, Donald Wayne Turner, and its insurer, The Home Indemnity Company, to recover damages for personal injuries resulting from an automobile accident on June 25, 1981. Liability was admitted; the sole issue before the jury was quantum.
The accident happened in the following manner: a World Wide oilfield supply truck driven by Donald Turner ran a stop sign causing Leleux's automobile to collide broadside into the Turner truck. The impact of the accident damaged the front left portion of Leleux's car and caused it to spin around several times. The following morning Leleux began having neck and upper back pain. Four days later, on June 29, 1981, he was first treated for his complaints.
A reviewing court should not disturb the trier of fact's damage award absent a determination that the fact-finder abused its much discretion under the facts of the particular case. Benson v. Seagraves, 445 So.2d 187 (La.App. 3rd Cir. 1984), writ denied, 447 So.2d 1071 (La. 1984); Reck v. Stevens, 373 So.2d 498 (La. 1979). In the present case, the trial court did not utilize either special verdicts or interrogatories to itemize the elements of damage. A lump sum judgment of damages is presumed to award all items of damage claimed, and the appellant's burden of proving the fact-finder clearly abused its great discretion is more difficult than usual, because the intention to award a specific amount for any particular item is not readily ascertainable. Dunaway v. Rester Refrigeration Service, Inc., 428 So.2d 1064 (La.App. 1st Cir.1983), writ denied, 433 So.2d 1056, 1057. To determine if an abuse of discretion has occurred when a general verdict has been used, each case must be analyzed on its own facts and circumstances, and each element of damages claimed must be examined. Washington v. Lake City Beverage, Inc., 352 So.2d 717 (La.App. 3rd Cir.1977), writ denied, 354 So.2d 1050 (La.1978).
*302 In his petition for damages Leleux sought recovery for lost wages, pain and suffering, medical expenses, permanent disability, and future medical expenses.
Leleux missed work until August, 1981. The litigants stipulated that the amount of lost wages totaled $2,000. This item of damages was not disputed and may be reasonably assumed to have been included in the damage award.
The area of greatest conflict involves Leleux's claim that he suffered debilitating headaches five to six times a week which continued to the date of trial.
Leleux first sought medical treatment on June 29, 1981, from Dr. Joseph Musso for neck and upper back pain which persisted when his neck was hyperextended. X-rays of the neck and upper back were normal and there were no muscle spasms. He diagnosed Leleux's injury as a cervical sprain and treated him with muscle relaxants, pain medication, and recommended the use of a heating pad. On July 8, 1981, Dr. Musso began Leleux on a regimen of daily physical therapy which continued through July 28, 1981. On July 9, 1981, Leleux began complaining of headaches which Dr. Musso found compatible with a cervical sprain. By July 21, 1981, Leleux indicated a subsidence of the headaches. On July 28, 1981, Dr. Musso found Leleux had full range of motion in his neck, was no longer complaining of pain and headaches, and was discharged to return to work. Dr. Musso did not treat Leleux again for this injury.
Eight months later, on March 1, 1982, Dr. Domingue, a neurologist who specializes in neck sprains and headaches, treated Leleux for headaches of varying frequency with pain focused on the back of the neck where the neck joins the head. His initial treatment was the same as Dr. Musso's and physical therapy was again ordered. An EEG done on March 22, 1982, and a CT Scan performed on May 18, 1982, were normal. Complaints of headache pain continued, and on March 30, 1982, Dr. Domingue discontinued the use of a muscle relaxant and prescribed motrin. On May 4, 1982, Leleux was given a cortisone injection in the neck. On June 8, 1982, Leleux returned still complaining of headaches. Dr. Domingue released Leleux opining that he did not have any serious neurological problems and that he could offer no further treatment. One year later, on May 23, 1983, Leleux saw Dr. Domingue, who at that time referred Leleux to Dr. Norman Anseman, a specialist in physical medicine and rehabilitation.
Dr. Anseman examined Leleux on June 14, 1983, for neck pain and headaches. Neurologically Leleux's examination was normal. He had no limitation of neck movement and no muscle spasms. Nevertheless, Leleux had subjective complaints of discomfort on extension and rotation of the neck. Dr. Anseman's initial diagnosis was occipital neuralgia. Cortisone was injected in the neck, and daily physical therapy was resumed. Leleux was instructed to improve his posture and was put on an exercise program. By the second visit on June 28, 1983, Leleux advised Dr. Anseman that his headaches had decreased to three times a week for approximately one hour, otherwise, he was experiencing no pain. Dr. Anseman's prognosis for Leleux was good; he opined that Leleux would be fully recovered in the near future and the need for further medical treatment seemed doubtful.
Leleux testified he saw no doctor and took no medication for his headaches between the intervals of July 28, 1981 to March 1, 1982, and June 8, 1982 to May 23, 1983. After Leleux returned to work, he missed only eight days of work because of his headaches and never consulted a doctor. Doctors Domingue and Anseman were of the opinion that there was a connexity between the accident and Leleux's headache complaints, but their determination was based largely on the case history Leleux provided. They also testified that the continued headaches could have been caused by such diverse things as anxiety, poor posture, or stress. Finally, all three treating physicians described Leleux's headache pain as not being severe.
*303 From this evidence it may be concluded that the jury chose to minimize Leleux's subjective complaints of pain. Because of this and the use of a general verdict, we are unable to determine whether the jury chose to award any or all of the $1,779.90 claimed as medical expenses.
Leleux also claimed damages for permanent disability and future medical expenses. Dr. Anseman testified that Leleux was progressing well, thought he would not require continued treatment, and believed that he would be able to discharge him soon. The jury was presented with sufficient evidence to conclude that Leleux would not have a permanent disability and future medical treatment would be minimal.
Questions of fact and credibility are generally left to the jury and its finding should not be disturbed unless they are manifestly erroneous. After reviewing the record, we can not say that the jury was manifestly erroneous in its evaluation of the case and its award of $5,000.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against Kenneth Leleux, appellant.
AFFIRMED.