493 So.2d 654 (1986)
Herbert J. TAYLOR, et ux., Plaintiffs-Appellants,
v.
DIXIE DANDY, et al., Defendants-Appellees.
No. 17966-CA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 1986.
C. William Gerhardt & Associates by C. William Gerhardt, Shreveport, for plaintiffs-appellants.
*655 Mayer, Smith & Roberts by Kim Hanson LaVigne, Shreveport, for defendants-appellees.
Before HALL, C.J., and MARVIN and NORRIS, JJ.
HALL, Chief Judge.
Plaintiffs, Herbert J. Taylor and Olivia A. Taylor, appeal from the judgment of the trial court awarding plaintiff, Herbert Taylor, $750.00 in damages and dismissing the claims of Olivia Taylor in plaintiffs' action for damages for personal injuries sustained as a result of a slip and fall in a grocery store. Named as the defendants were the owner of the store, Dixie Dandy d/b/a Shuler's Dixie Dandy, and its liability insurer, Wausau Insurance Company. The primary issue for consideration on appeal is the nature and extent of the injuries suffered by plaintiff, Herbert Taylor, in the fall. For the following reasons, we affirm the judgment of the trial court.

FACTS
On May 20, 1983, at approximately 11:00 a.m., plaintiff, Herbert Taylor, was shopping with his young son at the Dixie Dandy grocery store located in Jonesboro, Louisiana. As plaintiff walked down the aisle in the frozen food section near a freezer, he slipped and fell, injuring his lower back and right elbow. Plaintiff alleged that there was a wet substance on the floor, most probably water, which caused him to fall.
Plaintiff instituted this action for damages generally alleging that the accident was caused by the defendant's negligence in failing to maintain the floors of the store in a clean and safe condition, particularly in allowing a wet substance to remain on the floor thereby rendering it slippery and unsafe to customers. Plaintiff's wife, Olivia Taylor, joined the action seeking damages for loss of love, society, and consortium.
At the trial on the merits, plaintiff testified he was shopping at the defendant's store with his son and slipped on some water near a food freezer. The water wet his clothing when he fell. Plaintiff testified there were no warnings by defendant or its employees, either oral or written, of a wet floor.
The evidence indicated that a food freezer in the defendant's store had been leaking for quite some time preceding the plaintiff's fall and defendant's employees were to keep the area clean when they saw water on the floor. No warning signs to advise customers of the possible hazard had been posted nor had defendant established a regular inspection schedule to inspect and clean the area surrounding the leak. The faulty freezer was repaired by the defendant shortly after the plaintiff's fall.
Plaintiff testified that his back and right elbow were injured as a result of the fall and plaintiff immediately sought medical attention. At the medical examination, plaintiff complained of pain in his right arm and leg and in his back. Plaintiff was ambulating in a normal fashion and the diagnosis at that time was a sprain and contusion to the right forearm. Pain medication was prescribed.
Plaintiff had previously injured his back in three separate work-related injuries in 1981, 1982, and 1983. Plaintiff was off from work for a period of four to six weeks as a result of each accident and testified he had not yet returned to work following the March, 1983 accident. Plaintiff testified that at the time of his fall, he had been released by his treating physicians to return to work and he was both ready and able to do so. However, he was not able to resume his job duties after the fall due to back pain.
Plaintiff was employed as a bag maker at Stone Container Corporation and testified the job required bending and the lifting of heavy bales of paper, approximately fifty to eighty pounds each. Plaintiff's job duties consisted primarily of clean-up duties and bale patching. Plaintiff testified that subsequent to the fall he had not had any jobs which required lifting or bending. Following the fall, plaintiff worked at a restaurant for approximately two to three weeks, in the Louisiana Tech University cafeteria for approximately two *656 months and at Heart Country Shop for approximately three months. Plaintiff testified that he had to quit working at the restaurant as the cleaning duties were hard on his back. Plaintiff was fired from his position at the university cafeteria for absenteeism. Plaintiff stated he missed a lot of work because his back bothered him and he could not perform his work duties. Plaintiff's position at the Heart Country Shop required him to polish brass and plaintiff testified he was fired due to his inability to perform his job duties as a result of his back condition. Plaintiff testified that he had not filed any work-related claims following the fall at the defendant's store.
Plaintiff, who was twenty-six years at the time of the accident, stated that following the accident he could no longer participate in sports activities such as playing baseball, basketball, and jogging and that his sexual relationship with his wife had been adversely affected due to his back pain.
Plaintiff's wife, Olivia Taylor, testified that plaintiff could not participate in sports activities or help with household chores following the injury and their sexual relationship had been greatly affected. Mrs. Taylor stated that plaintiff experienced pain in his back "most all the time."
The medical evidence presented at trial was somewhat conflicting. Dr. Baer Rambach, an orthopedic surgeon, testified he first saw plaintiff on June 20, 1983. Plaintiff gave a history of two work-related injuries and the fall at the defendant's store. Plaintiff complained of pain in his lower back radiating into his leg. X-rays taken at that time revealed a slight narrowing of the intevertebral disk space at the L5-S1 level and a transitional 5th lumbar vertebrae, which meant there was asymmetry of the normal configuration of the vertebrae rather than being symmetrical. Rambach stated that this was a congenital anomaly which may render an individual more vulnerable or susceptible to back injuries. Plaintiff walked with a limp favoring the right lower extremity and there was some limitation of motion. Various tests produced mostly positive findings. Rambach's diagnosis was multiple contusions and sprains of the lumbosacral region of the spine. Rambach recommended a rigid rehabilitation program and no heavy manual labor work.
Rambach next saw the plaintiff in October, 1983 at which time plaintiff continued to have back and leg pain and discomfort with no improvement. X-rays taken at that visit did not show any changes. Rambach recommended further testing such as a myelogram but these tests were not performed. Dr. Etheredge, a partner of Rambach's, next saw the plaintiff on December 19, 1983. Dr. Etheredge was of the opinion that plaintiff had a recurrent sprain of the lumbosacral spine. Etheredge recommended retraining plaintiff to moderate work activity with a fifty pound limit of maximum lifting.
Rambach next saw plaintiff on October 26, 1984. Plaintiff indicated he continued to have pain in his lower back radiating into his right leg which had become more severe. Plaintiff related he had quit three jobs due to pain and discomfort. Rambach's examination revealed essentially no new findings and Rambach felt that plaintiff would be unable to engage in any physical work at that time. Rambach again recommended vocational rehabilitation for the plaintiff. In Rambach's opinion, the accident at the defendant's store was the cause of the plaintiff's difficulties in light of the fact that plaintiff had been released by two physicians to return to work preceding the fall. Although plaintiff had experienced previous injuries to his back before the instant injury, plaintiff had seemed to recover from them until the fall. Rambach did not find any neurological involvement. In Rambach's opinion, plaintiff's problem was primarily chronic muscle ligamentous irritation with an underlying degenerative disk problem. Rambach indicated that due to the subjective nature of plaintiff's complaints, his diagnosis was necessarily based on his belief of the plaintiff's sincerity.
*657 Dr. Robert Holladay had begun treating plaintiff before his fall at the defendant's store. Holladay first saw plaintiff on March 7, 1983 and plaintiff related a history of two work-related back injuries. Plaintiff complained of suffering from back pain and left leg pain with numbness and tingling since that time with difficulty in standing, walking, or sitting for any length of time. Upon examination, plaintiff complained of pain during several objective tests. X-rays of plaintiff's back revealed mild degenerative changes. Holladay observed muscle spasms and decreased sensation. Holladay's diagnosis at that time was a possible herniated nucleus pulposa. Plaintiff entered Schumpert Medical Center on March 28, 1983 for a myelogram and CAT scan of his lower back. The tests were essentially negative and did not reveal any significant results. Holladay did not find any congenital anomaly and stated that such a finding would not make an individual more susceptible to injury, contrary to Dr. Rambach's opinion. Plaintiff was discharged and Holladay prescribed a conservative course of treatment of medication and decreased activities.
Holladay next saw plaintiff on April 13, 1983 and plaintiff had essentially the same complaints of lower back pain and pain radiating into his hips and legs. Holladay found no evidence of a ruptured disk and felt that plaintiff was primarily having a muscle and ligament problem. Plaintiff was advised to return to a light work schedule and gradually increase his activities to more normal full work activities. Plaintiff was examined again on May 11, 1983 at which time he was experiencing some stiffness and soreness in his back but he had noticed improvement in his condition. Holladay's examination revealed no abnormal results and Holladay could not find any physical basis for plaintiff's complaints. There were no objective physical findings to verify the complaints and no evidence of any neurological abnormality. Plaintiff was released to return to full employment as of May 16, 1983.
Plaintiff was next seen by Dr. Holladay on December 19, 1984 and related his injury sustained in the fall. At that time, plaintiff complained of pain on the right side of his lower back into his right hip and stated all activities caused pain. Holladay did not find any evidence of nerve root irritation or a slipped disk and after his examination, Holladay's diagnosis was back pain, etiology undetermined. Holladay testified most of plaintiff's symptoms were muscular complaints and seemed to be like the ones plaintiff had previously experienced. Holladay stated that in his opinion it was difficult to understand why plaintiff was still having severe symptoms over a year following the injury. Plaintiff had no neurological problems and only minimal muscular problems. In Holladay's opinion, plaintiff could return to work with the limitation of avoiding continuous heavy lifting. Holladay stated he anticipated plaintiff had a strain of the lumbar facet joints which is not a debilitating injury. Simply stated, the facet joints are joints between the vertebrae which join the vertebrae bones together. However, Holladay stated that even with this injury it was difficult to understand the incapacity that plaintiff believed he had.
Plaintiff was also seen by Dr. J.E. Smith, an orthopedic surgeon, on May 18, 1983 preceding the injury at the defendant's store. At that time, plaintiff complained of pain in his lower back and left leg which interfered with his sex life. Smith's diagnosis was back pain of undetermined etiology. Smith believed that plaintiff did not have any significant back problem and that plaintiff should be able to engage in gainful employment. Plaintiff was also seen on May 15, 1983 in the emergency room at Jackson Parish Hospital complaining of back pain. Pain medication was prescribed.
Paxton Pruett, plant personnel manager at the Stone Container Corporation, testified plaintiff had been employed by it as a bag maker. While employed by Stone, plaintiff had filed seven claims for various injuries to his back and fingers sustained on the job, with the most recent injury to plaintiff's back sustained on February 15, *658 1983. Plaintiff was released from work to seek medical attention. Plaintiff was granted various medical leaves of absences until he was released to resume full work activities as of May 16, 1983. Plaintiff did not return to work following his release. Plaintiff notified his employer of his appointment with Dr. Smith on May 18, 1983 but the company was not notified of the results of the examination as requested. After receiving no contrary medical information and due to plaintiff's continued failure to report to work and to notify the company as to his condition, plaintiff was later terminated by the company effective May 20, 1983 in accordance with company policy. Plaintiff indicated to Pruett that he did not think he could work due to pain. At no time did plaintiff mention the accident at the defendant's store.
Gary Stokely, personnel management consultant with Heart Country Shop, testified plaintiff was first employed by the shop from June 15 to June 30, 1983. Plaintiff was fired due to his failure to report to work without notifying the shop. Plaintiff was later rehired by the shop and was employed there from November 3, 1983 to March 13, 1984. Plaintiff was then terminated for abusive language to a supervisor. Stokely testified plaintiff never reported any back complaints in the performance of his job duties. While employed at the shop, plaintiff filed two claims for work-related injuries, one claim for a shoulder injury and the other for chest pain experienced on the job.

TRIAL COURT JUDGMENT
After reviewing the evidence, the trial court found that plaintiff proved by a preponderance of the evidence that he fell on the defendant's wet floor on May 20, 1983. In assessing the extent of the injuries sustained by plaintiff, the court noted the medical evidence indicated that plaintiff's complaints were essentially subjective in nature and that Dr. Rambach had based his opinion upon his evaluation of the plaintiff's sincerity. The court further noted that plaintiff's testimony, particularly that as to his employment record, was inconsistent and that plaintiff's physical symptoms immediately prior to the fall were essentially the same as the ones complained of at trial. For these reasons, the court found that plaintiff's testimony concerning the extent of his injuries was unworthy of belief. The court found that plaintiff only suffered an injury to his elbow as a result of the fall. As plaintiff had been terminated from his employment, there was no showing of lost wages. The court awarded plaintiff damages in the amount of $750.00 together with all costs of the proceedings. The claims of Olivia Taylor were rejected.

ASSIGNMENTS OF ERROR
On appeal, the plaintiffs-appellants assert the following assignments of error:
1. The trial court erred in finding that plaintiff only suffered an elbow injury as a result of the accident in light of medical evidence that following the accident plaintiff suffered a restriction in his back which did not exist before the accident;
2. The trial court erred in failing to award substantial damages to plaintiffs, including damages for loss of love, society, and consortium; and,
3. The trial court erred in not awarding expert witness fees as costs.

APPLICABLE LEGAL PRINCIPLES
It is well-settled that due to better capacity of the trier of fact to evaluate live witnesses, when there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the findings of the trial court, on review the appellate court should not disturb this factual finding in the absence of manifest error. The reviewing court must give great weight to the factual conclusions of the trier of fact and where there is conflict in the testimony, reasonable inferences of fact and reasonable evaluations of credibility should not be disturbed on review even though the appellate court may feel that its own evaluations and inferences are as reasonable. See Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, *659 365 So.2d 1330 (La.1978), and Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985). See also Brents v. Gulf Ins. Co., 465 So.2d 860 (La.App. 2d Cir.1985), writ denied, 469 So.2d 984 (La. 1985); Copple v. Gonyea, 431 So.2d 869 (La.App. 2d Cir.1983), and Dixon v. Winston, 417 So.2d 122 (La.App. 3d Cir.1982), writ denied, 420 So.2d 985 (La.1982).
Plaintiffs must prove causation by a preponderance of the evidence and this burden may be carried by either direct or circumstantial evidence. Smith v. State, Through Dept. of Transp., Etc., 412 So.2d 685 (La.App. 2d Cir.1982), writ denied, 413 So.2d 907 (La.1982). Causation is a question of fact as to which the trial court's determinations are entitled to great weight and cannot be disturbed absent manifest error. Gilliam v. Williams, 451 So.2d 681 (La.App. 2d Cir.1984); Emond v. Tyler Building and Const. Co., Inc., 438 So.2d 681 (La.App. 2d Cir.1983); Smith v. State, Through Dept. of Transp., Etc., supra; Causey v. Monroe, 421 So.2d 1151 (La.App. 2d Cir.1982), writ denied, 426 So.2d 180 (La.1983); and Rivet v. State, Through Dept. of Transp., 434 So.2d 436 (La.App. 3d Cir.1983).
With regard to expert testimony, the trial court is not bound by such testimony. Rather, expert testimony is to be weighed by the court the same as any other evidence. The weight which is to be given to the testimony of an expert is to be determined by his qualifications, experience in the field and the facts upon which his opinion is based. The trial court is accorded considerable discretion in the acceptance or rejection of expert testimony. See Tyler v. Richardson, 476 So.2d 899 (La.App. 2d Cir. 1985), writ denied, 478 So.2d 907 (La.1985); Hickman v. Hickman, 459 So.2d 140 (La. App. 2d Cir.1984); Emond v. Tyler Building and Const. Co., Inc., supra; Copple v. Gonyea, supra, and Williams v. City of New Orleans, 433 So.2d 1129 (La.App. 4th Cir.1983).

EXTENT OF PLAINTIFF'S INJURIES
As noted earlier, the primary issue before this court is factual, that is, whether the trial court erred in its assessment of the nature and extent of the injuries sustained by plaintiff as a result of the fall. Based upon the record before us, we find that the trial court was not clearly wrong. Plaintiff argues that his back was injured as a result of the fall, both from a new injury and from the aggravation of a preexisting condition. However, the trial court found that the medical evidence together with plaintiff's inconsistent testimony mandated the conclusion that plaintiff had only injured his elbow in the fall. We agree.
The evidence established that plaintiff had three work-related injuries to his back before his fall in May, 1983. Plaintiff had sought medical attention from several physicians, including Dr. Holladay. Although Dr. Holladay had released plaintiff to resume full employment duties as of May 16, 1983 and plaintiff testified he was ready and able to return to his duties at Stone Container Corporation on the date of the accident, this testimony is not supported by the record. Plaintiff was seen in an emergency room on May 15, 1983 complaining of back pain and plaintiff complained of back pain which interfered with his sex life to Dr. Smith in an examination conducted on May 18, 1983. Plaintiff did not attempt to return to work at Stone Container before the fall and in fact he was terminated effective May 20, 1983, the date of the accident, due to his failure to notify his employer of his medical status and to report to work in accordance with company policy. Plaintiff did not advise his employer of the alleged injury sustained in the fall. Thus, it does not appear the plaintiff was prepared to return to work on the date of his fall.
While the medical evidence is somewhat conflicting, it is clear from the testimony that plaintiff's condition is primarily a muscular and ligament problem. There was no evidence of a ruptured or slipped disk or neurological involvement. While Dr. Rambach testified that he believed the sincerity of plaintiff's complaints and felt that plaintiff's condition was caused by the fall, Dr. *660 Rambach had not treated plaintiff for his back condition prior to the fall and plaintiff failed to give him a full history as to his three prior injuries and recovery therefrom. Dr. Rambach's opinion that the fall caused plaintiff's physical problems was predicated on the assumption that plaintiff had recovered from his previous injuries and was free of symptoms and complaints at the time of the fall, which was not factually correct. Dr. Holladay had the advantage of examining plaintiff both before and after the fall. Holladay stated plaintiff's complaints subsequent to the fall were similar to those previously experienced by plaintiff. Holladay found mostly muscular complaints following the fall and essentially no physical basis for the severe symptoms reported by plaintiff. Holladay believed that plaintiff could return to work with some lifting limitations.
After reviewing all of the testimony, we conclude as did the trial court that plaintiff did not establish by a preponderance of the evidence any aggravation of a pre-existing injury or new injury to plaintiff's back as a result of the fall. The evidence established that plaintiff was seen by three different physicians within nine days prior to the accident, once by Holladay, in an emergency room, and by Smith. Upon each examination, plaintiff voiced back pain complaints. These complaints appear to be similar, if not identical, to those made by plaintiff after the fall and at trial. This evidence coupled with the failure of plaintiff to return to work before the fall supports the findings of the trial court that plaintiff's back condition remained unchanged as a result of the fall.

DAMAGES
Plaintiffs argue that the trial court erred in failing to assess substantial damages, including damages for loss of love, society, and consortium.
It is well-settled that the trier of fact has much discretion in assessing the quantum of damages and before a damage award may be disturbed on appeal, it must be determined that the trier of fact abused its great discretion. This determination must be made based upon the peculiar facts and circumstances of each particular case and with due regard to the fact that the trier of fact is in the best position to evaluate the credibility of the witnesses, including their testimony as to the nature and extent of their injuries. See Tyler v. Richardson, supra; TR Drilling Co., Inc. v. Howard, 463 So.2d 923 (La.App. 2d Cir.1985); Hughes v. Querbes & Nelson, Inc., 460 So.2d 1161 (La.App. 2d Cir.1984), writ denied, 462 So.2d 1265 (La.1985); Howery v. Linton, 452 So.2d 295 (La.App. 2d Cir. 1984); Reggans v. Aetna Casualty & Surety Company, 308 So.2d 898 (La.App. 2d Cir.1974), writ denied, 309 So.2d 675 (La. 1974), 310 So.2d 642 (La.1975) and 310 So.2d 646 (La.1975), and Leleux v. Home Indem. Co., 457 So.2d 300 (La.App. 3d Cir. 1984).
The trial court found that the only injury sustained by plaintiff in the fall was an injury to the plaintiff's elbow. The award to plaintiff of $750.00 in damages for his arm injury is not so low as to constitute an abuse of the trial court's discretion. Further, in light of the trial court's findings as to the minimal extent of the plaintiff's injuries, the trial court was not clearly wrong in rejecting the claim for damages by Olivia Taylor.

COSTS
Plaintiffs argue that the trial court erred in not assessing certain expert witness fees as costs.
In reviewing both the written reasons for judgment and the judgment itself, it appears that defendants were in fact taxed with all costs of the proceedings. It does not appear in the record that the trial court made any specific ruling as to the setting and assessment of expert witness fees.
As noted in Bentley v. Indus. Fire Protection, Inc., 350 So.2d 982 (La.App. 2d Cir.1977), when costs are taxed in the rendering of a judgment, the expert witness fees are implicitly included despite the absence of explicit language to that effect. See LSA-R.S. 13:3666.
*661 Since the trial court has made no specific ruling setting and taxing expert witness fees as costs, the appropriate procedure is for plaintiffs to file a rule to show cause in the trial court for specific assessment of these fees. See LSA-C.C.P. Art. 1920, LSA-R.S. 13:3666, and LSA-C.C.P. Art. 2088.
For the reasons expressed herein, the judgment of the trial court is affirmed at the costs of the plaintiffs-appellants.
AFFIRMED.