FRED W. JONES, Jr., Judge.
This appeal by plaintiffs, husband and wife, presents for our consideration the narrow issue of whether a damage award in appellants’ favor for whiplash injuries sustained by the wife in an automobile accident is inadequate. We answer in the negative and affirm.
Factual circumstances surrounding the accident were undisputed and liability was not seriously contested. On August 29, 1977 a car driven by Mrs. Dixie Martin, while stopped on DeSiard Street in Monroe waiting for preceding traffic to move, was struck from the rear by an automobile operated by John McHann and owned by his employer, Nix Brokerage. As a result of the impact, which only slightly damaged the involved vehicles, Mrs. Martin’s neck was thrown backward and forward in typical whiplash fashion.
This suit was filed on August 29, 1978 by Mrs. Martin and her husband against McHann, his employer and its liability insurer. McHann, a resident of Mississippi, did not appear to testify at the trial, which was held on November 17, 1980. In an excellent, detailed written opinion, the trial judge concluded that Mrs. Martin had sustained a mild to moderate whiplash injury to the muscles of her neck and upper shoulder area from which she had fully recovered by the end of 1978. He awarded general damages in the sum of $17,000 and special damages (largely for reimbursement of medical expenses) in the amount of $2,606.68. The trial judge explained that he made no award for lost wages or diminished earning capacity because there was no evidence that Mrs. Martin had either been employed for some years prior to the accident or intended to seek employment thereafter.
Mrs. Martin, who resided in Crossett, Arkansas, testified that immediately after the accident her neck “felt funny but it didn’t hurt at that time.” However, because her neck was “real sore” the next morning, she visited her family physician in Crossett, Dr. Toon. According to Mrs. Martin, Dr. Toon had X-rays taken of her neck, which were negative, and said that her neck would probably be sore for two or three weeks. He prescribed pain medication and muscle relaxants.
Because Mrs. Martin experienced no relief from her neck pain, she was referred by Dr. Toon to Dr. Altenberg, a Monroe orthopedic surgeon. Mrs Martin testified that she visited Dr. Altenberg around October 1, 1977. He examined the X-rays which had been taken for Dr. Toon and confirmed that they were negative. This physician then informed Mrs. Martin that she would possi *1299 bly have neck pains for two or three more months and to “just bite the bullet and it would go away.”
Soon thereafter Mrs. Martin started going to Dr. Chenoweth, a Crossett chiropractor, who treated her neck condition until February, 1978. These treatments consisted primarily of neck manipulations and the application of heat to the neck and shoulder muscles. Mrs. Martin also wore a cervical collar for some four months.
Since her daily headaches failed to respond to the chiropractor’s treatment, Mrs. Martin returned to her family doctor, who made an appointment for her with Dr. Sisk at the Campbell Clinic in Memphis, Tennessee. Mrs. Martin stated that she was seen by Dr. Sisk in February 1978, at which time extensive X-rays were taken. Mrs. Martin testified that these X-rays were also negative. She related that Dr. Sisk simply recommended a program of physical therapy that could be engaged in at home. Mrs. Martin stated that this regimen likewise proved futile in relieving her pain.
Neither Dr. Toon, Dr. Altenberg, Dr. Chenoweth nor Dr. Sisk testified at the trial. Further, the testimony of none of the doctors was presented in any other form for consideration by the trial judge.
On August 18,1978 Mrs. Martin consulted Dr. Retia Edmonson, a Texarkana neurosurgeon. This physician, whose statement was filed in evidence, found at the time of her initial examination that Mrs. Martin had spasm and tenderness about the shoulder girdle regions and the back of the neck. Secondary to that, Dr. Edmonson noted an irritation of the greater occipital nerves which arise at the base of the skull. These symptoms were characterized as consistent with a whiplash type injury.
Dr. Edmonson had Mrs. Martin admitted to a hospital on August 20,1978 for medical tests, including X-rays. All of these proved negative and Mrs. Martin was discharged from the hospital after several days. Thereafter, and until August 5, 1980, Mrs. Martin visited Dr. Edmonson a total of some 12 times for treatment of her neck condition, usually complaining of headaches and soreness in her shoulders and the back of her neck. Dr. Edmonson stated that during the course of these visits the intensity of objective symptoms varied from slight or moderate to severe. Range of neck motion was diminished in all directions.
On an office visit in March 1979, Mrs. Martin related to Dr. Edmonson that she was driving a distance of 115 miles almost every day to visit her terminally ill mother in Rayville, Louisiana. This continued for a period of about six months.
In the summer of 1980 Dr. Edmonson referred Mrs. Martin to a gynecologist for treatment of menstrual problems. Mrs. Martin testified that she had been plagued with this difficulty since the birth of her last child about four years earlier. She underwent a hysterectomy in August 1980.
Dr. Edmonson last saw Mrs. Martin on August 5, 1980, and found that she was continuing to improve. She stated, in summary, that Mrs. Martin displayed objective clinical evidence of “cervical, trapezius, rhomboid myocytis with some secondary occipital neuralgia.” She expected this to heal over a period of time, adding: “I think that normally these things do when they get rid of some of their tensions and anxieties . . . that has kept her in a sort of a spasm all the time.”
Mrs. Martin was examined by Dr. Norris C. Knight, Jr., an orthopedic surgeon, at defendants’ request, on December 17, 1979. Dr. Knight performed extensive tests and took X-rays. The latter revealed degenerative arthritic changes in the thoracic spine and some loss of the lordotic curve in the cervical spine, due to a deep muscle spasm. Dr. Knight concluded that Mrs. Martin had suffered a cervical sprain. Because of the loss of motion in her neck and the loss of the lordotic curve, he assigned to Mrs. Martin a disability of 5% to the body as a whole.
At the trial a substantial portion of Mrs. Martin’s testimony was devoted to a description of the contrast between her lifestyle prior to the accident (very active physically, particularly involving teenage daughter) and after the accident (severely restricted, lying on heating pads, consuming large quantities of pain medication, inabili *1300 ty to do housework or care for young child). Mrs. Martin’s testimony was corroborated by that of her husband and adolescent daughter.
The trial judge correctly found that Mrs. Martin sustained a whiplash injury as a result of the 1977 automobile accident. Although none of the physicians whose testimony was presented classified the seriousness of the injury in the continuum between mild and severe, we cannot say from our review of the record that the trial judge was clearly wrong in characterizing it as a “moderate” whiplash.
Although the record indicates that the consequences of this injury to Mrs. Martin were probably aggravated by and possibly extended because of gynecological problems and the stress of attending a terminally ill mother, we find it unnecessary to assume the impossible task of separating these different causative strands. For, in the final analysis, our study of the record convinces us that the award of $17,000 in general damages was not an abuse of the trial judge’s broad discretion.
Plaintiffs also complain of an inadequate award for special damages. In a very comprehensive section of his written opinion, the trial judge discusses each claimed item of special damages and efficiently documents each allowance or rejection. As he points out, this claim for special damages is quite confusing because “not only are a number of medical and drug statements in the nature of running accounts over long periods of time without explanation or corroboration, but there are transportation charges for mileage which does not comport with the meager evidence presented as to distances.” Be that as it may, the award made for special damages is fully supported by the record.
Finally, although not asking for damages for Mrs. Martin’s loss of earning capacity in their petition, plaintiffs now argue that the trial judge erred in refusing to make an award for that item.
It is recognized that even if a claimant was unemployed at the time of his injury he may be entitled to an award for impairment or diminution of earning power, which is based on the injured person’s ability to earn money rather than what he actually earned before the injury. Folse v. Fakouri, 371 So.2d 1120 (La.1979).
However, as is customarily required in civil cases, one who claims damages for loss of earning power must prove his loss by a preponderance of the evidence. Chaney v. Our Lady of Fatima Catholic Church, 391 So.2d 501 (La.App.3rd Cir.1980).
As the trial judge correctly points out, this record is totally devoid of any evidence upon which an award could be based for Mrs. Martin’s impairment of earning capacity due to the accident. She had not worked for some years prior to the accident. There was no expression on her part of an intention to secure employment in the future and, obviously, no description of the possible nature of that employment nor anticipated rate of remuneration. Under the circumstances this claim was properly denied.
For the reasons stated, we affirm the judgment of the district court, at appellants’ cost.