459 So.2d 152 (1984)
Floyd J. SEPULVADO, Plaintiff-Appellee,
v.
WILLIS-KNIGHTON MEDICAL CENTER, INC., et al., Defendant-Appellant.
No. 16598-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1984.
Writ Denied December 14, 1984.
*153 Booth, Lockard, Politz, LeSage & D'Anna by John R. D'Anna, Shreveport, for plaintiff-appellee.
Watson, Blanche, Wilson & Posner by Felix R. Weill, Baton Rouge, for defendant-appellant.
Before PRICE, FRED W. JONES, Jr. and NORRIS, JJ.
NORRIS, Judge.
This appeal is from a jury verdict in a personal injury case. The plaintiff, Floyd Sepulvado, won $175,000 in damages from an unanimous twelve-man jury. Defendant, Willis-Knighton Medical Center, was denied a request for remittitur or a new trial. Defendant now seeks reduction by means of appeal, claiming manifest error and abuse of discretion. We affirm the lower court judgment recognizing the jury award.
The injury which gave rise to this lawsuit occurred on September 17, 1980, as plaintiff was being rolled out the hospital in a wheelchair. He had entered the hospital on September 10 to undergo a laminectomy and lysis surgery. The operation was an apparent success. After a week in the hospital for recuperation, plaintiff was discharged and boarded a wheelchair for the trip to his car. The aide driving the wheelchair attempted to pass through a doorway with a threshold raised about ¾ inch high. The wheels struck the threshold head-on, stopping the chair and jolting plaintiff from his seat, almost onto the floor. He experienced a sudden, sharp pain in his back and had to be returned to his room. Insistent *154 on going home, he was released later the same day despite considerable pain and soreness in the back. This pain, he asserts, is the same kind as he experienced before the operation and is what the operation corrected, except that it has worsened and spread to other parts of his body, particularly to his legs and feet. The pain is now constant and although it sometimes diminishes for short intervals, it is often excruciating and always serious enough to require medication. Plaintiff is unable to sit or stand for long periods of time and has been unable to work since the accident.
Mr. Sepulvado has a history of back problems. At the time of the accident he was 53 years old. He was a carpenter, contractor and house builder. Some twenty years earlier, he had suffered his first ruptured disk and had undergone surgery. Then, about three to five years later, he had another ruptured disk and another surgery. A myelogram was made for the second surgery but it was not used at trial. Both these operations were performed by Dr. Bonn, who is now deceased. According to Mr. Sepulvado, these operations were successful and enabled him to resume his regular active work routine virtually without pain. Then in 1978 he "stepped awkwardly" into a hole while doing carpentry work and began to have new pain in his back, left leg, and foot. He went to see Dr. Bennett Young, who could find no serious problem but prescribed pain medicine. Plaintiff claims that after a few days' rest he was able to return to work. Then in late August of 1980 he fell in a ditch, experienced severe pain, and went to see Dr. Young again. Dr. Young placed him in the hospital for tests, including a myelogram that was introduced at trial. The doctor found an extradural defect at L-4, 5 and diagnosed a herniated disk, disk fragment, or arachnoiditis. He scheduled surgery for September 10 in order to pinpoint the problem and correct it. Dr. Young testified at trial.
The hospital accident occurred one week after surgery. In the meantime, plaintiff had been recuperating and had begun walking. After the accident, he was taken home. Plaintiff testified that he reported the injury and resultant pain to Dr. Young soon afterwards. Dr. Young testified that he received his first knowledge of the accident on March 30, 1981, the date he noted it in his records. The nurses clinical and progress report from the hospital, however, contains the notation dated September 17, 1980 at 3:45 p.m., "Dr. Young notified of condition; stated OK for discharge," indicating that he had notice of the incident within fifteen minutes of its occurrence.
Since Willis-Knighton is a "health care provider" under the Louisiana Medical Malpractice Act, LSA-R.S. 40:1299.47, plaintiff's claim was originally heard by a medical review panel. The panel concluded that the hospital accident had only aggravated a pre-existing condition and that it had not caused permanent impairment. One member of the panel, Dr. Austin Gleason, testified at trial.
Before trial, Willis-Knighton stipulated its liability. Thus the jury's only question was quantum. After a two day trial, the jury rendered a verdict for $175,000. As mentioned earlier, defendant moved for a remittitur or, alternatively, a new trial. The trial judge denied the requested relief.
On appeal, defendant argues the trier of fact committed manifest error in finding that plaintiff's injuries caused by the wheelchair accident were permanent and not temporary. Defendant stresses the results of the medical review panel as well as testimonial remarks from other physicians. Our approach to review is guided by the holdings in Canter v. Koehring Co., 283 So.2d 716 (La.1973), clarified by Arceneaux v. Domingue, 365 So.2d 1330 (La.1979). In Arceneaux, the Supreme Court said:
As an aid to the exercise of the appellate function of review of facts in civil cases, we attempted to explain, in Canter v. Koehring, supra, without great detail, the appropriate standard. We said that "even though the appellate court may feel that its own evaluations and inferences are as reasonable," it should not disturb reasonable findings of *155 the trial court when there is conflict in the testimony. We prefaced this observation: "When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. 283 So.2d 716, 724 (emphasis added).
We did not foresee that this explanation would be misunderstood to mean that: "There is no manifest error when the evidence before the trier of fact furnishes a reasonable basis for its finding." We said the appellate court should not disturb this factual finding in the absence of manifest error. The difference is important. "Manifestly erroneous," in its simplest terms, means "clearly wrong." We said, then, that the appellate court should not disturb such a finding of fact unless it is clearly wrong. Therefore, the appellate review of facts is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court; there must be a further determination that the record establishes that the finding is not clearly wrong (manifestly erroneous). 365 So.2d at 1333.
Therefore we shall review the evidence to see whether the verdict is clearly wrong.
Plaintiff first called Dr. Young, who testified about his examinations of plaintiff. The myelogram of September 1980 showed that he had either a herniated disk, a herniated disk fragment, or arachnoiditis (an inflammation of spinal tissue due to the earlier surgeries). Dr. Young said he performed a laminectomy and lysis surgery and considered it a success. He admitted, however, that he could not recall plaintiff mentioning the accident until the following March, in spite of plaintiff's testimony and hospital records to the contrary. He also said that plaintiff had arachnoiditis. This condition could be causing some of plaintiff's pain, plaintiff had it before September 1980, and it is a permanent condition.
Plaintiff next called Dr. Boykin, who examined him in April 1981, after he had reported the hospital accident. Dr. Boykin said plaintiff did very well postoperatively until the accident. By April 1981, plaintiff was totally disabled and unable even to sit down for a long period of time. He complained of pain all the way from his lower back to his feet, with a burning sensation in his feet and toes. After an examination, Dr. Boykin's impression was that plaintiff had an extrusion of disk material and that it was due to the hospital accident. He said that persons who have just undergone a laminectomy are "vulnerable" to reinjury in the same spot. He then performed a myelogram which was "virtually similar" to the one of September 1980, a CT scan which showed some hypertrophic spurring but no disk fragments, and an EMG that was normal. He saw plaintiff again in December 1981, when the pain was at its worst. He told plaintiff that surgery could possibly alleviate the pain, but that he could guarantee only 80% mobility at best and that the surgery was very risky. Then, on cross examination, Dr. Boykin stated that in his opinion the accident had not caused permanent injury.
Plaintiff also called Dr. Robert Holladay, who examined him in June 1982 for his disability insurer. He diagnosed postoperative diskectomy on the lumbar spine and a recurrent herniated disk. This condition had disabled plaintiff from using his back or lower extremities for lifting, bending, or climbing stairs. He said the hospital accident "more probably than not" caused plaintiff's present condition. On cross examination, however, he admitted that he formed this opinion without a complete, detailed knowledge of plaintiff's prior back troubles. He had reviewed Dr. Young's discharge summary as well as Dr. Boykin's discharge summary, with its evaluation of plaintiff, but he had not reviewed any prior myelogram (except for Dr. Boykin's), nor the CT scan, nor the EMG.
Plaintiff took the stand and said he felt "real good" on the sixth day after the operation. He was ambulating well until the accident. Plaintiff and his wife both *156 testified to the extent of plaintiff's pain and discomfort. They both described his inability to work, his difficulty standing or sitting without pain, his curtailment of social and family activities, and the serious abridgment of his recreational pursuits. Mr. Sepulvado indicated, however, that he had killed two four-point deer during the recent season.
The hospital called one witness, Dr. Austin Gleason, who had served on the medical review panel. His opinion was the plaintiff suffered a temporary disability that lasted twelve weeks. Another panel member, Dr. Smith, thought the disability lasted only four weeks. The third member, Dr. Kelly, found an aggravated pre-existing condition but no permanent impairment. Dr. Kelly is reportedly a friend of plaintiff's. On cross examination, Dr. Gleason said the September 10 surgery appeared to be a complete success. He also admitted that he had never personally examined plaintiff.
On review of this evidence, we can find no clear, manifest error. There is in fact ample evidence to support the finding of permanent injury to plaintiff resulting from the wheelchair accident. Although the medical panel said the injury could have lasted no longer than twelve weeks, Dr. Boykin said plaintiff was still in excruciating pain in December 1981, some fifteen months after the accident. The jury placed great weight on Dr. Holladay's expert opinion that plaintiff had suffered a recurrent herniated disk in his lumbar spine as a result of the wheelchair accident, leaving plaintiff very disabled. Furthermore, the jury chose to believe the general medical descriptions offered by Drs. Young and Boykin, more than they believed their conclusory statements, elicited on cross examination, that plaintiff was not permanently injured. This is a case of conflicting testimony and the jury's determination must stand. Finally there is plaintiff's own testimony, corroborated by his wife, that he still cannot work and must constantly take pain medicine.
In sum, we can find no manifest error as defendant claims.
Defendant next argues that the award is too large for the injury sustained. Our guidelines for approaching such an argument are laid out in Reck v. Stevens, 373 So.2d 498, 501 (La.1979):
Thus, the initial inquiry must always be directed at whether the trier [sic] court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's "much discretion", La.Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reasons, be considered either excessive, ... or insufficient ... Only after such determination of abuse has been reached, is a resort to prior awards appropriate ... for purposes of then determining what would be an appropriate award for the present case.
In the initial determination of excessiveness or insufficiency, an examination of prior awards has a limited functionif indeed the facts and circumstances of the prior awards are closely similar to the present. The prior awards may serve as an aid in the determination only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, but the mass of them) for (truly) "similar" injuries ... (citations omitted)
See also Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
Our first duty is to consider whether this plaintiff's particular injuries are worth so much less than the sum awarded as to amount to an abuse of discretion. The facts already articulated in this opinion show that plaintiff is under constant pain. Sometimes his legs have a "tingling" or sleepy sensation; other times, a burning sensation. His back remains sore and tender. In short, plaintiff has made a very strong showing of pain and suffering.
Furthermore, plaintiff is considering a difficult and expensive surgery in hopes of relieving his pain. Otherwise, he can expect *157 medical and drug expenses for the rest of his life. At least part of the jury's general award can be attributed to future medical.
Finally, plaintiff has sustained a great loss of earning capacity. It is fairly certain that he will not be able to pursue his livelihood, carpentry and housebuilding. Calculations of this sort are necessarily uncertain. Hill v. Sills, 404 So.2d 1323 (La. App.2d Cir.1981). Nevertheless we cannot find an abuse of discretion here. Even if we disregard the pain and suffering and future medical elements of the award, which are considerable, and assume that plaintiff had eight or ten working years left, reckoned from the time of trial, this judgment will compensate him between $17,500 and $22,000 per year, which is not excessive. See also Bize v. Boyer, 408 So.2d 1309 (La.1982); Folse v. Fakouri, 371 So.2d 1120 (La.1979).
Defendant maintains, however, that plaintiff's case is not so simple. The hospital contends plaintiff had been suffering some pain for many years and great pain since 1978. By comparison, it says, plaintiff's present pain is only marginally greater. They cite Perniciaro v. Brinch, 384 So.2d 392 (La.1980), as authority that a low award is suitable for a tort plaintiff with a pre-existing back problem. In that case, Ms. Perniciaro was already suffering from osteoarthritis when defendant, going 25 miles per hour, rear-ended her car. The jury gave her only $500. The Supreme Court elevated the quantum to $5,000, saying that was the lowest possible award. The Supreme Court actually said that the trial court improperly credited her with a short period of disability by attributing most of it to her prior condition. The court said plaintiff must receive damages for any aggravation of her prior condition, and it was only the deference to the trial court's special factfinding duties that prevented the Supreme Court from reaching a higher award. The hospital also cites Flettrich v. Jacob, 427 So.2d 492 (La.App.5th Cir. 1983); Anthony v. New Orleans Public Service Inc., 449 So.2d 666 (La.App. 4th Cir.1984) writ denied 450 So.2d 968 (La.1984); and Spears v. Aguilar, 436 So.2d 672 (La.App. 4th Cir.1983). We have examined these cases and find them inapposite to Mr. Sepulvado's case. True, Mr. Sepulvado had been suffering much pain since his fall in August 1980 and before the wheelchair accident. But just days before the wheelchair accident, he had undergone a complex surgery to alleviate the condition. By all accounts the surgery was a success. Plaintiff was entitled to expect and had already experienced an improvement in his health.
Instead, plaintiff was re-injured at a time when he was unusually susceptible to re-injury. We think the controlling principle is that announced in Sansonni v. Jefferson Parish School Board, 344 So.2d 42, 46 (La.App. 4th Cir.1977):
We follow the rule of tort law set forth in Rachal v. Bankers and Shippers Ins. Co., [146 So.2d 426, La.App. 3d Cir.1962, writ ref'd]. "A tort feasor must take his victim as he finds him. The tort feasor is responsible for all the natural and responsible consequences of his wrong, even [though] the consequences of the tort are made much more serious or harmful by reason of a pre-existing physical defect or weakness of the injured person."
We are not in a position to question how much of plaintiff's present pain and disability was caused by the accident and how much was due to earlier back problems. The jury made that determination based on their assessment of the evidence and we can find no abuse of discretion.
For all these reasons, we can find neither manifest error nor abuse of discretion and we affirm the judgment of the trial court. All costs will be paid by appellant, Willis-Knighton Medical Center.
AFFIRMED.