505 So.2d 815 (1987)
Russell WACTOR, Plaintiff-Appellant,
v.
PICKENS LUMBER COMPANY and its insurer, Wausau Insurance Companies, and James H. Foreman, Defendants-Appellees.
No. 18 505-CA.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1987.
Rehearing Denied April 30, 1987.
Writ Denied July 1, 1987.
*816 Williams & Williams by Moses Junior Williams, Tallulah, for plaintiff-appellant.
Hayes, Harkey, Smith & Cascio by Charles S. Smith, Monroe, for defendants-appellees.
Before MARVIN, FRED W. JONES, Jr. and SEXTON, JJ.
*817 MARVIN, Judge.
In this appeal, the plaintiff who suffered disabling injuries in a motor vehicle accident in 1983 seeks to increase a judgment that awarded him $150,000 general damages and approximately $17,000 for past medical expenses. The defendant contends that the trial court did not abuse its great discretion and argues that the judgment should be affirmed.
We amend to increase the award to allow for future medication expense. As amended, we affirm.

FACTS
Plaintiff, Russell Wactor, a 46 year-old bricklayer, suffered broken ribs and other injuries when defendant's large Mack truck and trailer that entered the favored highway from an inferior and intersecting roadway collided with the right side of the automobile on the favored highway in which Wactor was a passenger.

INJURIES AND TREATMENT
Three days after the accident Wactor saw a general practitioner, Dr. Chenier, complaining of severe pain in the low back area, right leg, arm, rib and hip areas, and difficulty in deep breathing. Dr. Chenier did not hospitalize Wactor but prescribed pain medication and referred him to Dr. Rowlett, an orthopedic specialist. Dr. Rowlett diagnosed fractured ribs and prescribed heat treatments, muscle relaxants, and pain medication. Dr. Rowlett advised Wactor to exercise and work within the limits of his pain.
After some three months of treatment pain began radiating down Wactor's left leg. A CAT scan revealed nerve root encroachment in the lumbosacral area. Wactor was referred to Dr. Stringer, a neurosurgeon, in March 1984. A myelogram revealed possible complications and indicated surgery. Dr. Rowlett and Dr. Stewart, an orthopedic specialist, performed the surgery and found an arachnoid cyst on the spine in the low back area which they determined was causing nerve root pressure. Dr. Rowlett performed a lumbar laminectomy to enlarge the bony area around the cyst and relieve compression of the nerve. Dr. Stewart fused the L-4 and L-5 lumbar vertebrae and the sacrum with bone taken from Wactor's hip and inserted metal rods to further stabilize the lower spine.
Wactor had a pre-existing back condition that arose, in part, from injuries he sustained in a 1957 automobile accident. An "old" compression fracture of the L-4 vertebra was found that was "likely caused" by the 1957 accident, as well as spondylolisthesis, an instability of the lumbosacral junction, which Dr. Stringer said was probably of congenital origin. Dr. Stringer unequivocally stated that the 1983 accident aggravated Wactor's pre-existing conditions and may have caused the arachnoid cyst.
Wactor will not be able to return to brick mason work, and he will continue to have pain and experience a great deal of difficulty flexing his back. Dr. Stringer explained that it was unlikely that future surgery would benefit Wactor and that Wactor had a 25 percent permanent partial disability. Dr. Stringer thought that although it is possible that his condition will improve with time, Wactor will likely be unable to return to performing basic manual labor and will have to live with some pain for the remainder of his life, for which he would have to take mild pain medication. At this juncture, we note that the trial court, in its reasons for judgment, did not discuss or award any amount for future medical.
We also note that a tortfeasor takes his victim as he finds him and is obligated to compensate his victim to the full extent of the injuries and disabilities he causes, even though the victim may have been predisposed to such injury and disability. Dupree v. Louisiana Transit Management, 441 So.2d 436 (La.App. 2d Cir.1983).
Wactor was hospitalized two times for a total of 11 days and was confined at home for several weeks thereafter. He underwent several diagnostic procedures, including a CAT scan and myelogram and saw his treating physicians approximately 15 times for more than a year before trial. Wactor's medical expenses are itemized:

*818
1. Dr. Chenier $ 381.25
2. Dr. Rowlett 423.00
3. Mercy Regional Medical Center 35.00
4. River Oaks Hospital 9,252.15
5. Dr. Dunn 530.00
6. Dr. Barlow 314.00
7. Dr. Stewart 3,978.50
8. Dr. Stringer 1,815.00
 __________
TOTAL $16,828.90

WORK HISTORY
The record shows that Wactor worked for many years as a brick mason at an hourly rate ranging from $8$12 per hour. His work as a brick mason, however, was shown to have been very sporadic. Wactor did not produce income tax returns in response to a subpoena and admitted that he had not filed tax returns for the four years prior to trial. Wactor explained that during those years he had not worked enough or made enough money to file an income tax return.
Economic experts who testified about Wactor's lost earning power agreed that he had a remaining work-life expectancy of 14.5 years. His life expectancy was stated to be 27 years. Plaintiff's expert, Dr. Bettinger, calculated lost-earning capacity based on the earnings of a typical brick layer, $10 per hour, 40 hours a week, for 50 weeks each year. Dr. Bettinger estimated Wactor's loss of earning capacity at $324,530 and opined that Wactor had lost some $28,000 in potential earnings between the accident and the trial.
Defendants' expert, Dr. Hood, testified that he could not calculate any lost earning capacity or loss of future earnings because plaintiff had no demonstrated earning history on which projections could be based.
In reasons for judgment the trial court said in part:
Although there was conflicting testimony, the owner of the store on which plaintiff did brick work and a co-employee of plaintiff both testified that, prior to the 1983 automobile accident at issue, plaintiff complained of his back and avoided heavy lifting or stooping in his brick mason work. They also testified that plaintiff came back to work after the 1983 accident, and that there was no change in the way plaintiff worked before and after the accident. * * *
... judgment will therefore be granted in favor of plaintiff in the amount of $150,000.00 together with all medical costs. The problem for the court, as previously noted, is to adequately compensate the insured person for his injury under the existing facts. In Sepulvado v. Willis-Knighton Medical Center, Inc., 459 So.2d 152 (La.App. 2d Cir.1984), the Second Circuit Court of Appeal affirmed a lump sum award of $175,000.00 to a back patient who was reinjured leaving the hospital. While not exactly on point concerning the nature of the injury, the reasoning of the court in affirming the damage award is here applicable. The court found that the injured party had suffered a great loss of earning capacity, and felt the general award for all damages would compensate the man at the rate of $17,500.00 to $22,000.00 per year over his expected 8 to 10 years of expected income producing life. This was used despite the fact that the court had already recognized past and future suffering, and expected future medical costs.
In our case, Dr. Bettinger testified that the man has a future work expectancy of 14.5 years. Using the same approach, we find Mr. Wactor will be compensated at the rate of approximately $10,000.00 per year, or approximately what he has shown at best.
This is a difficult case. Defense testimony shows on the one hand that Wactor had worked in approximately the same manner after the accident. Plaintiff's testimony was that he can hardly do anything. On balance, this court is satisfied and convinced that Wactor has suffered pain and loss for which he must be compensated.
The in globo award of $175,000 in Sepulvado was made by a jury at the instruction of the court, as authorized by CCP Art. 1813. Compare CCP Art. 1812. In addition, we assumed that the jury in Sepulvado considered plaintiff's pain and suffering, loss of earning capacity, and future medical expenses. That award was appealed as excessive by the defendant. Sepulvado *819 was a 53-year-old carpenter predisposed to a disabling back injury. The adequacy of his award of $175,000 was weighed against the elements that are under consideration in this appeal.
When we review either an in globo award or a particularized award, whether made by a trial judge or of a jury, we consider the legal sufficiency of the proof of the elements of damage that are claimed in the light of the discretion afforded the trier of fact to assess damage or damages. We consider what elements of damage were proved, the range of the amount that might have been assessed for each particular element, and whether the total for all elements (or the in globo amount) was within the trier of fact's discretion. See Mullin v. Vessier, 400 So.2d 1192 (La.App. 1st Cir.1981).
If our factual review convinces us, upon articulated reasons, that the trier of fact abused its discretion in awarding damages, or failed to make an award for an element of damage, we exercise our appellate power and amend the judgment. Reck v. Stevens, 373 So.2d 498 (La.1979). If the award is abusively low, we raise the the lowest amount we find that the trier of fact could have awarded. If the award is abusively high, we lower to the highest amount we find that the trier of fact could have awarded. Coco v. Winston Industries, 341 So.2d 332 (La.1976).
The trier of fact may itemize and make an award for each element of damage to facilitate appellate review. Where the award is itemized it is not necessary for the appellate court to deduce what amount the trier of fact could have awarded (may have considered) for each element as in the case of the Sepulvado in globo jury award. See CCP Art. 1812.
We cannot deduce that the trial court considered that Wactor would have some expense for the remainder of his life for pain medication. We can deduce that the trial court's award of $150,000 was in part for Wactor's pain and suffering between the accident and the trial and for the remainder of his life and in part for his disability, lost wages, and the impairment of his earning capacity.

PAINDISABILITY
While we recognize that each award of damages must be decided on its own facts and that no two cases are exactly alike, prior awards under similar circumstances may serve as a general guide in determining whether the trial court abused its discretion. In such review, we determine whether the present award is greatly disproportionate to the mass of past awards for truly similar injuries. See Reck v. Stevens, supra, at p. 501.
General damage awards for pain and suffering and permanent disability for plaintiffs who have sustained permanent injury of varying degree and received treatment similar to that of Wactor have ranged from $50,000 to $180,000.
In Wilson v. Wal-Mart Stores, Inc., 448 So.2d 829 (La.App. 2d Cir.1984), the plaintiff sustained a spinal injury and was hospitalized on three separate occasions, one of which was for the surgical removal of a ruptured disc. The plaintiff also suffered nerve root encroachment, for which an epidural nerve block was performed to relieve the pressure. The plaintiff was treated by five different doctors over a 2½ year period and was discharged as having a 20 percent permanent disability. This court held that the trial court's general damage award of $100,000 was not excessive.
In Coleman v. Douglas Public Service, Inc., 423 So.2d 1205 (La.App. 4th Cir.1982), the court affirmed a $50,000 general damage award to a former longshoreman who was permanently disabled from any manual labor. Coleman underwent extensive medical treatment for spinal stenosis and an aggravation of a pre-existing degenerative spinal condition.
In Nugent v. U-Haul Co., 368 So.2d 781 (La.App. 2d Cir.1979), a roughneck sustained an aggravation of a pre-existing congenital spinal disease which necessitated a bilateral mass spinal fusion from the L-4 vertebra to the sacrum. The plaintiff incurred a 35 percent disability which would *820 improve with time to 20 percent. We held that the $80,000 award for pain and suffering was not excessive.
In Causey v. Monroe, 421 So.2d 1151 (La.App. 2d Cir.1982), plaintiff suffered a compression fracture of the 4th lumbar vertebra, chronic myoligamentous back strain, cervical disc syndrome, cervical myositis, ulnar neuritis and severe depression. Plaintiff's treatment lasted for some two years and included seven days of hospitalization. Plaintiff suffered a 25 percent permanent disability. An award of $180,000 in general damages was not an abuse of the court's discretion.
Considering this plaintiff's individual circumstances and history before and after the accident, we deduce that the trial court's award could have included from $50,000 to $100,000 for the pain, suffering and disability that Wactor has sustained and will sustain.

EARNINGS LOSS
An award for impairment of earning capacity is not predicated merely upon the difference between a plaintiff's earnings before and after a disabling injury, but encompasses the loss of one's earning potentialthe loss or reduction of a person's capacity to do that which he is equipped by nature, training and experience, and for which he may receive recompense. See Folse v. Fakouri, 371 So.2d 1120 (La.1979); Morgan v. Willis-Knighton Medical Center, 456 So.2d 650 (La. App. 2d Cir.1984). However, one who claims an earnings incapacity must prove his loss with some reasonable degree of certainty. The award cannot be based on speculation, possibility, or conjecture. See Holman v. Reliance Ins. Companies, 414 So.2d 1298 (La.App. 2d Cir.1982); Martin v. McHann, 404 So.2d 1297 (La.App. 2d Cir.1981).
Under circumstances where a plaintiff has worked as a bricklayer on a very sporadic basis, and has not earned enough money to file an income tax return for four years, any projections of lost earning capacity founded on the earnings of a typical bricklayer, working regularly, would be speculative and of dubious value. This plaintiff, however, has demonstrated his ability in the past to work sporadically as a brick mason, and some award for impairment of earning capacity was correctly considered by the trial court.
We deduce that Wactor might have earned as a sporadically working bricklayer the amount on which he would not have to pay taxes (about $3,500 a year), or approximately 1/7 of what Dr. Bettinger said a typical 40-hour a week bricklayer would earn at $10 an hour. Projecting Dr. Bettinger's calculations, we determine that the trier of fact could have awarded from $50,000 to $100,000 for the loss of earning capacity.
We conclude that the trial court's in globo award of $150,000 for general damages and loss of earning capacity falls within the range of discretion afforded the trial court and is not legally inadequate under the circumstances of this case.

OTHER ISSUES
The plaintiff contends that the trial court erred in failing to admit into evidence the deposition of George Wactor and in not allowing the rebuttal testimony of Quenton McConnell. Plaintiff contends that the testimony of these persons would support an increase of claim for loss of earnings and for pain and suffering. The trial court ruled that plaintiff had not made a diligent effort to obtain the presence of George Wactor and that McConnell's testimony would be repetitive. Other witnesses testified to the effect that Wactor argues. The trial court has much discretion in rulings on evidentiary questions and in this instance we find no abuse of discretion.
The trial court could have tacitly considered plaintiff's claim for past lost wages. As we have discussed, the in globo award is adequate to compensate Wactor for some lost wages.
Dr. Stringer testified that Wactor would suffer pain for the rest of his life, for which he would require mild pain medication. The record shows that Wactor has a 27-year life expectancy. The trial court *821 made no award for future medical costs. Wactor, however, did not attempt to prove with specificity what his medication would cost. Some amount should be awarded nonetheless. Cushman v. Fireman's Fund Ins. Co., 401 So.2d 477 (La.App. 2d Cir.1981). Under the described circumstances, we shall increase the award by $2,700 which will allow plaintiff approximately $100 a year for his medication for the remainder of his life.

DECREE
We amend to increase the judgment from $150,000 to $152,700. At appellee's cost, the judgment, as amended, is AFFIRMED.