544 So.2d 1192 (1989)
Hillard H. JONES
v.
SAMPEY BROTHERS GENERAL CONSTRUCTION, LTD., et al.
Nos. 89-CA-18, 89-CA-19.
Court of Appeal of Louisiana, Fifth Circuit.
May 10, 1989.
*1193 Lazard Levy, Marrero, for plaintiff-appellant.
Lozes, Cooper & Cambre, David M. Cambre, New Orleans, for Sampey Bros. General Contractors, Inc., Whiley J. Breaux, Sr., and New Hampshire Ins. Company, defendants-appellees.
Before CHEHARDY, C.J., and BOWES and GRISBAUM, JJ.
CHEHARDY, Chief Judge.
Hillard H. Jones, plaintiff in this personal injury suit, appeals the district court judgment in his favor seeking a quantum increase. We amend the award to include a reasonable sum for economic losses and, in all other respects, we affirm.
On January 29, 1985, Jones suffered injury when he was momentarily pinned between the bumpers of a car and a truck on which he was working. Jones had parked his truck at the edge of an intersection roadway, front bumper to front bumper with a car owned by Ronald Verdun. Jones was standing between the two vehicles attempting to jump-start the car. Wiley Breaux, driving a low-boy tractor-trailer, made a too-wide right turn at the intersection. The 12-foot blade of the bulldozer he was hauling caught the truck and pushed it into the front bumper of the car. Jones' knees were jammed between the two vehicles; his body was twisted sideways. When released, Jones felt pain in his ankles, knees and lower back.
The district judge found Breaux at fault in causing the accident and Jones' injuries, a tear in the cartilage of his right knee and increased degeneration of his low back. He cast Breaux's employer, Sampey Brothers General Contractors, Inc.,[1] and its insurer, New Hampshire Insurance Company, in judgment. On the issue of damages the fact-finder commented, "I think the large part of the man's work history or the loss if you will of work is more because of the absence of work and because [of] the degenerative condition that he was suffering prior to the accident but nevertheless I'm going to include some award for that in the judgment about (sic) which I am about to render." The court awarded Jones $35,000 in damages plus stipulated medical expenses of $24,879.17.[2] No party disputes the liability finding.
On appeal Jones contends that the general damage sum is inadequate to compensate him for the pain and suffering and economic losses he experienced as a result of the accident. Defendants' response is that the award is within the trial judge's discretion. We entertain these contentions in reviewing the in globo award, and consider the legal sufficiency of the proof of the elements of damage that are claimed, in light of the discretion allowed the trier of fact to assess damage or damages. Wactor v. Pickens Lumber Co., 505 So.2d 815 (La.App. 2 Cir.1987).

INJURIES, TREATMENT AND IMPAIRMENT
Dr. Levy Stagni, chiropractor, treated Jones conservatively from February 5, 1985 to November 1, 1985. In light of his physical examination and his reading of Jones' lumbar thermogram, Dr. Stagni believed that Jones had sustained a lumbar sprain with associated sciatic neuralgia (nerve root pressure) and a sprain or other damage to the right knee in the January 1985 accident.
On referral, Jones was treated by orthopaedic surgeons Drs. Neville Reehlmann and Naum Klainer, who performed an arthroscopy to remove torn cartilage from his right knee in April 1985. Jones received an injection of epidural steroids at the L4-5 *1194 disc level in June 1985. At Jones' own request Dr. Reehlmann returned him to light-duty work status on September 4, 1985.
Jones returned to Dr. Klainer in September 1986 with complaints of knee and radiating back pain. The doctor prescribed medication for Jones' back complaints. Because he was concerned with the success of the initial knee repair, Dr. Klainer re-hospitalized Jones in June 1987. The second surgery revealed no tear in the cartilage remnant but documented the presence of severe arthritis at the right knee joint. Jones last visited Dr. Klainer in July 1987.
At trial Dr. Klainer testified that the January 1985 accident had caused Jones' right knee injury and had accelerated the pre-existing wear and tear occurring naturally in his lower back. He did not assign Jones a disability rating but limited him to sedentary activities that would not load or stress the knee and prohibited his lifting more than 20 pounds. The doctor believed that Jones' ability to work depended on his degree of pain.
For trial purposes, Jones was examined by the defendant's expert, orthopaedic surgeon Dr. Harold Stokes. Based on his September 1986 physical examination and his review of numerous diagnostic tests, the doctor considered Jones' arthritis of the lumbar spine to have existed for at least two years prior to examination and found that he exhibited mild arthritic changes in both knee joints. These conditions notwithstanding, Dr. Stokes testified that as a result of the January 1985 accident Jones had experienced a torn medial meniscus of the right knee and had aggravated the pre-existing disc degeneration in his lower back.
The doctor assessed Jones a 10% permanent impairment of the lower right leg. He testified that the restrictions limiting weight-lifting or repetitive stooping or bending, which he would have imposed in regard to Jones' back at the examination, were identical to those which he would have imposed prior to the accident in view of the degenerative spine condition. As a result of the knee injury Jones was prohibited from prolonged squatting or kneeling or excessive stair-climbing, but was not restricted on standing or walking. The doctor testified that Jones was employable at a sedentary capacity such as bench welding and could broaden his activities within his limitations.

PAIN AND SUFFERING DAMAGES
Jones has proved a causal connection between the January 1985 accident and his knee and back injury by a preponderance of the evidence. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971). He is entitled to compensation for the damages he suffered. Thames v. Zerangue, 411 So.2d 17 (La. 1982). Both Dr. Klainer and Dr. Stokes related Jones' right knee injury directly to the accident. Both agreed that the accident had exacerbated the pre-existing arthritis in Jones' low back. Dr. Stagni's initial diagnosis of neuralgia was not borne out by any subsequent diagnostic test conducted on Jones. In interpreting the lumbar MRI test performed July 1987, Dr. Klainer testified that the bulging disc reflected at the L4-5 level was consistent with the aging process.
The measure of recovery for pain, suffering and impairment is fair and reasonable compensation to the extent that injuries can be translated into dollars. Jones is entitled to compensation for his knee injury, resultant post-traumatic arthritis and impairment. He is entitled to recover for pain, which he testified subsided two to three weeks after the first surgery and thereafter occurred upon his squatting or kneeling. Jones is entitled to recompense for the aggravation of the arthritis in his lower spine and the pain which improved after the spring 1985 injection and thereafter occurred intermittently upon his bending forward. Perniciaro v. Brinch, 384 So.2d 392 (La.1980).
The district judge, who had the benefit of the parties before him, fixed Jones' damages at $35,000. After careful review of the instant facts we interpret the award to adequately compensate Jones for the pain and suffering he experienced as a result of *1195 the accident. As compensation for this element of damage, we affirm the award. Reck v. Stevens, 373 So.2d 498 (La.1979).
Insofar as the award includes compensation for economic damages, however, it is so low as to constitute an abuse of discretion. We shall therefore amend the trial court judgment to increase Jones' recovery for this item of damage.

WORK HISTORY AND EMPLOYABILITY
Jones has a sixth grade education and has since worked as a welder and pipe fitter. He owned a welding company for 10 years until its bankruptcy and then worked as a pipe fitter for Brown and Root for one and a half years.
As a member of the Steamfitters and Plumbers Local 60, he was employed at the nuclear power plant in Taft, Louisiana, at the rate of $12.71 per hour. Jones remained employed for five years until he was laid off. He then worked at the Tenneco refinery from the spring of 1984 until an August 1984 reduction in force, at an hourly rate of $16.80. He did not actively seek additional work through the union and was not employed at the time of the January 29, 1985 accident.
For eight months after the accident Jones did not report to the union as "able to work." In February 1985 he obtained a six-week job with Charles Harrington, supervising a concrete-laying crew. He worked an eight-hour day earning $8 an hour until the company closed temporarily. Jones worked a similar job for Harrington for three months beginning in May of 1986.
In October 1985 Jones accepted a union job as a bench welder at the Tenneco oil refinery. After explaining the accident and his injuries to his supervisor, Jones was placed in "sheltered employment." He was given the opportunity to sit or stand at his bench; work was brought to him. He was not required to do any climbing or lifting or any task that he considered might hurt him. Jones earned an hourly wage of $16.80 until the end of January 1985 when the job ended due to work force reduction.
Jones never reapplied for a union job thereafter, although he testified at trial that the union would have attempted to place him in a job within his capabilities and limitations. Beginning in late 1986, he did contract work, soliciting jobs for Bartlett Contractors. The job lasted four months; Jones earned an average of $10 per hour. On four occasions in 1987 and eight occasions in 1988, Jones was employed as a substitute school bus driver. He successfully completed that job, which required him to sit for 45 minutes at a time.
Susan Smith, occupational therapist, evaluated Jones on January 22, 1987. On the basis of her physical capacity evaluation, Miss Smith testified that Jones was unable to sit or stand in a functional position, such as at a table or bench, for any reasonable period of time. Correlation of her test results indicated that Jones was unfit for employment as a pipe fitter or welder. She further testified that Jones' inability to sit for a length of time limited his employability in a sedentary occupation. Miss Smith was unaware of Jones' post-accident employment as either a bench welder or a bus driver.
Dr. Cornelius Gorman testified as defendants' vocational rehabilitation expert. On the basis of achievement tests he administered to Jones in September of 1987, Dr. Gorman found that Jones' construction industry experience qualified him for a clerical job in sales or inventory management at a rate of up to $8 per hour. He was also a candidate for light industry work such as bench welding.
Finally, Dr. Gorman testified that welding and pipe fitting remained a severely depressed industry with little anticipated improvement. He admitted that Jones' limitations made him a less attractive job candidate, but testified that in his experience in working with Local 60, the union advocates and attempts to rehire injured members who are willing to work.

ECONOMIC LOSSES
The trial court reasoned that Jones' inability to work was in large measure a *1196 result of the depressed job market and of Jones' long-standing back injury. However, it styled the award to include economic compensation. Based on the instant facts and circumstances, we are convinced that when the $35,000 award is seen to include both pain and suffering and economic damages, it constitutes an abuse of the much discretion afforded the trier of fact. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). We therefore amend to raise the award to the lowest amount that the trial court could reasonably have awarded. Wactor, supra, at 819.
To calculate past wage losses, Jones' economist, Dr. Melville Wolfson, used a pre-tax base of $17,941, Jones' 1984 income tax figure. He estimated Jones' losses through the date of trial at $60,999. The defense economist, Dr. Kenneth Boudreaux, used a pre-tax base of $17,374.23, the average of income on the 1983 and 1984 returns. He calculated Jones' past economic losses at $49,656.52. Both experts assumed that Jones did not re-enter the work force after his accident.
Damages for both past and future economic losses are estimated on an injured person's earning capacity, his ability to earn. Folse v. Fakouri, 371 So.2d 1120 (La.1979). The record reflects Jones' post-accident ability to earn $16.80 in sheltered employment a wage identical to that paid on a pre-accident union job. Using Dr. Boudreaux' economic base, which we find to be more reasonable, the lowest reasonable award which could have been rendered for past economic losses is $5,733.50.
Using a work-life expectancy of 8.87 years, an earning capacity increment of 4.4% and a discount rate of 8.33%, Dr. Wolfson estimated Jones' future losses at $147,380 assuming total disability and at $89,880 assuming return to work at minimum wage. Dr. Boudreaux used a work-life expectancy of 6.84 years, an earning increase of 5.75% and a discount rate of 8.50%. He calculated Jones' future losses at $125,056.99 or $62,528.50 net of 50% earning capacity.
In determining the lowest reasonable award for Jones' prospective economic losses, we consider his physical condition prior to the accident, his work record, the amount of his earnings and the probability or improbability that he would have been able to earn similar amounts for a number of years but for the accident. Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968). Jones' own trial testimony documents that he is able to perform work of a reasonable character, work for which he is fitted by training and experience. It documents that when he chose to work Jones could earn $8, $10 or $16.80 per hour. It documents that Jones declined to actively seek sheltered employment. Using Dr. Boudreaux's projections on the future loss net of 50% earning capacity, which we find to be more reasonable, the lowest reasonable award for Jones' prospective economic losses is $20,634.40.

MEDICAL EXPENSES
The amount of Jones' past medical expenses was agreed upon at trial and the total is not challenged on appeal. Jones does seek amendment of judgment to include an award for future medical expenses. At trial Jones did not prove that he required future knee replacement surgery. Rather, Dr. Klainer testified that he might consider further knee repair depending on the degree of pain Jones experienced and whether it inhibited his functioning. The doctor admitted that he had not treated or prescribed pain medication since June 1987. Dr. Klainer's testimony speculates; it does not establish with legal certainty that future surgery will be undertaken. Coffil v. New Orleans Public Service, Inc., 453 So.2d 1226 (La.App. 4 Cir. 1984). We therefore affirm the denial of recovery for future medical expenses.

DECREE
For the foregoing reasons, the district court's judgment in favor of Hillard H. Jones is amended to increase the award by $26,367.90 to a total of $86,247.07. As amended, the judgment is affirmed. Defendants are cast for interest on the increase *1197 in the award[3] and for cost of the appeal.
AMENDED AND AFFIRMED.
NOTES
[1] The corporate defendant was identified in the petition as Sampey Brothers General Construction Ltd.
[2] The judgment also awarded $5,000 on Iva Jones' consortium claim brought by separate suit, which award is not appealed.
[3] Defendants have deposited $85,193.97, the amount of the trial court award plus interest, into the registry of the court.