MARVIN, Judge.
In this appeal of a judgment awarding damages totaling more than $450,000 in a personal injury action arising out of a rear-end collision, each litigant seeks to modify the jury's assessment of damages.
Defendants, who are the driver, owner, and liability insurer of the 18-wheeler that rear-ended plaintiff and who admitted liability, seek to reduce, as abusively excessive and unsupported, the general damage award of $400,000 and the award for future medical expenses of $35,000. Plaintiff seeks to increase the general damage award and the award of past medical expenses of $15,025.
We amend to reduce the general damage award to $200,000 and the future medical award to $15,000, and, as amended, affirm.
FACTS
The accident occurred May 12, 1987, while Louis Baldwin, a 73-year-old retiree for about 14 years, was driving his pickup on a highway from his home in Coushatta to his garden a few miles away. The impact threw Baldwin against the interior of the pickup and partly beneath the steering wheel. Without losing consciousness, but experiencing breathing difficulty, he crawled from the truck and remained on or near the ground while awaiting an ambulance. He explained his thoughts: “I didn’t think I’d ever see Coushatta again. I mean that. I thought that was it.”
Baldwin was hospitalized from May 12 until June 1 for injuries that included a broken rib, partial collapse (15-20 percent) *195 of a lung, and pneumonia caused by his immobilization. He wore a rib splint for about eight weeks to restrict his movement and decrease pain and was confined to bed at home for about three weeks after he left the hospital.
Baldwin periodically saw Dr. Huckabay, his treating physician, for complaints of chest and back pain. In August 1987 he was referred to Dr. Anglin, an orthopedic surgeon, when he began to experience severe neck pain and headaches.
Dr. Anglin found a limited range of neck motion, both up and down and side to side. Reviewing x-rays made during Baldwin’s hospitalization, he found muscle strain and mild' degenerative arthritis in Baldwin’s cervical and lumbar spine. Dr. Anglin prescribed anti-inflammatory medication, a muscle relaxant, and a cervical collar to restrict movement and relieve pain. At trial in November 1988, Baldwin still had neck pain and was still wearing the hard cervical collar whenever he left the house.
Baldwin began experiencing numbness and tingling in his right arm in late 1987, which, according to Dr. Anglin, was caused by either a cervical disc or a bone spur impinging on a nerve root. The nerve root impingement was confirmed by a CT scan done in May 1988 at Dr. Huckabay’s request. Because of his age, Baldwin was not considered a good candidate for cervical disc surgery, which he declined. His left arm developed numbness in August 1988. Because of the numbness in both arms, Baldwin often drops things.
In February 1988, Dr. Anglin prescribed a TNS unit (transcutaneous nerve stimulator, which generates a low electrical charge) to relieve the pain, stiffness and muscle spasms in Baldwin’s neck. Baldwin still wears the TNS unit daily, except when sleeping. The doctors expected him to continue to need the stimulator, the cervical collar, medication, and heat packs to relieve his neck pain in the future.
In January 1988, eight months after the accident, Baldwin developed fever and chills from a viral infection. He was hospitalized for several days because the severity of the infection was worsened by the residual effect of his injuries from the accident.
Baldwin again was hospitalized for one night in September 1988 for fever and chills. Two days later it was discovered he had a urinary tract infection that was not medically related to the accident. Baldwin contends, in answer to the appeal by defendants, that the award for past medical should be increased to include the medical expenses for this treatment. See discussion of this issue, infra.
Baldwin has smoked cigarettes for about 50 years. He testified that he smoked a pack a day for 10-12 years in his “younger days,” but smoked only two cigarettes a day for some unstated period before the accident. Baldwin testified that he still smokes, “but not much.” His wife testified that after the accident Baldwin smokes or chews tobacco “constantly.” Both testified that he began having daily coughing spells only after the accident.
Baldwin has had pneumonia twice, once about a year before the accident and once immediately following the accident while hospitalized. He also has fibrosis, or decreased elasticity of the lung tissue which occurs with aging and increases in degree with the number of cigarettes smoked. Baldwin was advised to stop smoking to avoid further aggravation of his respiratory problems.
Pulmonary function tests done on Baldwin in March and September 1988 showed Baldwin’s lung capacity to be less than half of the “normal” or expected capacity. He receives intermittent outpatient “positive pressure breathing treatments,” inhaling oxygen or medication to clear his lungs and aid his breathing.
Baldwin still experiences headaches, pain and limited range of motion in his neck, numbness in his arms, and breathing difficulties. Dr. Huckabay expected these problems to continue and explained that Baldwin’s ability to breathe was affected by such things as his smoking, his fibrosis, the trauma of the accident, and his two bouts with pneumonia. Dr. Huckabay felt Baldwin would be susceptible to respirato *196 ry infections in the future, and possibly to falls because of his restricted mobility.
Before the accident Baldwin, who had been retired from work for 14 years, worked in his garden five or six days a week, did yard work at his home, and enjoyed fishing and hunting.
Baldwin testified that he had not hunted, fished, or worked in his garden since the accident, and that he had tried, but was unable to do, yard work because of his breathing difficulties and the weakness in his arms. He walks about four blocks a day for exercise. He drives only for short distances because his headaches make it difficult for him to “focus very long in one direction.” His short walks and drives are his only activities. He has trouble sleeping since the accident, and seems nervous and restless to his wife and a long-time friend.
GENERAL DAMAGES
Defendants concede that Baldwin’s injuries from the accident contributed to his respiratory problems, aggravated the degenerative arthritis in his neck, and significantly changed his lifestyle from active to sedentary.
The $400,000 general damage award is an abuse of the jury’s discretion for a 73-year-old plaintiff because some of Baldwin’s neck pain has been reduced with medication, the cervical collar and the TNS unit, and because he has had no “acute illness” attributable to his respiratory problems after the initial hospitalization, he continues to smoke against medical advice, and he is not confined or immobile, but is able to walk and drive for short distances. Defendants ask that we reduce the award to $60,000. Baldwin asks that we increase it to $725,000 because his pain and physical limitations are expected to continue for the rest of his life.
Our review convinces us that the general damage award is abusively high for the reasons which we have summarized in the above paragraph which are supported by the record. In such circumstances, we reduce the award to the highest amount we find to be within the jury’s
reasonable range of discretion. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). We determine the range of discretion by a review of several cases, some of which we discuss.
A 55-year-old plaintiff in Schexnayder v. State, 477 So.2d 1175 (La.App. 1st Cir.1985), was hospitalized for nine days with a fractured rib, a compression fracture of a thoracic vertebra, and mild nerve root entrapment in her neck. She wore a body brace for three months, had periodic nosebleeds, and received psychiatric treatment after the accident. At trial most of her pain had subsided except for pain in her neck and numbness in her fingers. Her doctor did not expect her to have surgery and felt her future problems would be only slightly greater than those of other people her age. The trial court’s $200,000 general damage award was found excessive and was reduced to $100,000.
A “young lady” teacher in Aucoin v. Hartford Ace. & Indem. Co., 499 So.2d 1042 (La.App. 3d Cir.1986) was hospitalized with head, neck and back injuries and developed intermittent numbness in both hands. She had a 25 percent impairment of the cervical spine, caused either by a compressed nerve or by aggravation of a congenital defect, which was expected to continue indefinitely and limit her activities. A lump sum award of $150,000 for general damages, lost wages and medical expenses was appealed as excessive and affirmed.
This court reviewed an in globo award of $150,000 for general damages and loss of earning capacity to a 46-year-old sporadically employed bricklayer in Wactor v. Pickens Lumber Co., 505 So.2d 815 (La.App. 2d Cir.1987), writ denied. Wactor had broken ribs as well as back injuries that were caused or aggravated by the accident. After back surgery, he had a 25 percent permanent partial disability and was expected to have some pain for the rest of his life. We deduced that $50,000-100,000 of the in globo award was for general damages and found that amount was not abusively low.
*197 In Carpenter v. Hartford Fire Ins. Co., 537 So.2d 1283 (La.App. 2d Cir.1989), we affirmed a $170,000 general damage award to a 71-year-old widow who was active and in good health before she fractured her knee in a fall. She had knee surgery and complications during her 2V2 month hospitalization. She developed arthritis in her knee and bursitis in her shoulder, and could not walk, eat, bathe, use the bathroom, or get in and out of bed without help.
We have reviewed other cases and we are referred to others by Baldwin and by defendants in support of their respective contentions that Baldwin’s general damage award is either too low or too high. No case or cases should control Baldwin’s award. The awards in other cases serve only to illustrate the permissible award within the range of the jury’s reasonable discretion. Each case must be decided on its own peculiar facts and the circumstances of the particular plaintiff.
Before his accident Baldwin was enjoying his retired status, being somewhat actively engaged in gardening, doing yard work, hunting, and fishing. Defendants concede that his lifestyle, after the accident, is no longer active. His susceptibility to respiratory problems is increased because he continues to smoke against medical advice. Even though some of his pain has been corrected and countered, the numbness in his arms and his partial immobility are deemed permanent. Cervical surgery is not recommended because of Baldwin’s age. He is not totally confined or immobilized. He can walk with care and drive short distances. His enjoyment of life has been, not wholly, but partially, limited.
Baldwin is entitled to a general damage award that fairly and reasonably compensates him in dollars for the deprivation and difficulty caused by the accident. Turner v. New Orleans Public Belt R.R., 414 So.2d 847 (La.App. 4th Cir.1982). Considering his comparative circumstances before and after the accident, and his age, we shall reduce the award of general damages to $200,000, the highest amount we find within the jury’s reasonable range of discretion.
MEDICAL EXPENSES
Baldwin asks that the $15,025 award for past medical expenses be increased to include the $906 cost of his hospitalization and treatment for his urinary tract infection in September 1988. This hospital stay was prompted by fever that cleared overnight. Two days later, the urinary tract infection was discovered. Dr. Huckabay did not consider the infection to be medically related to the accident. The jury properly excluded the $906 expense. See Brown v. Great Atlantic & Pacific Tea Co., Inc., 509 So.2d 557 (La.App. 3d Cir.1987).
Dr. Huckabay expects to see Baldwin at least once every 6-8 weeks for the rest of his life, and more often if he has further complications or develops respiratory infections, to which Dr. Huckabay considers him “highly susceptible.” Baldwin does not desire, and Dr. Huckabay does not advise, surgery to relieve his neck pain. Instead, Baldwin will continue physical therapy at intervals that will vary with the degree of his pain and discomfort, according to Dr. Huckabay.
The record does not show the exact cost of the physical therapy or the office visits in Dr. Huckabay’s charges, which totaled $5,200 during the 18 months between the accident and trial. When he last saw Dr. Anglin two months before trial, Baldwin was told to return in one month. He did not return, explaining at trial that Dr. Ang-lin had released him. The jury award is apparently based on the closing argument to the jury by Baldwin’s lawyer:
I think the [past] expenses, $3,500 per year, is reasonable for what treatments he will go through, the therapy that he will go through, and the different times he will see Dr. Huckabay or Dr. Anglin. I believe Mr. Baldwin has a reasonable life expectancy of ten years, so we will put $35,000 there. (Our emphasis.)
Baldwin’s prescription drug costs averaged about $175 per year and are expected to continue.
*198 Defendants admit that Baldwin will need medical treatment in the future but argue the $35,000 award for future medical expenses is excessive for Baldwin’s anticipated nonsurgical treatment. There is simply no evidence, however, that suggests that Baldwin’s life expectancy is more or less than 10 years or that his medical expenses in any future year will equal his average annual medical expense during the period between the accident and the trial. Baldwin proved only that he is entitled to some reasonable amount for future medical expense.
Under the circumstances of this record, we find the highest award supported by the record for future medical expense should not exceed $15,000. We shall reduce the award to that amount. See and compare Wactor v. Pickens Lumber Co., supra, 505 So.2d at 820-821, and LeBleu v. Dynamic Indus. Constructors, 526 So.2d 1184, 1190 (La.App. 3d Cir.1988), writ denied, 528 So.2d 154.
DECREE
We amend the judgment to reduce the general damage award to $200,000 and the award for future medical expense to $15,-000. In all other respects, the judgment is affirmed, at Baldwin’s cost.
AMENDED AND AFFIRMED.