j^GOTHARD, Judge.
At issue in this appeal is the amount of general damages awarded the plaintiff as a result of a slip and fall at Gio’s Pizza in Metairie. Made defendants in this action were, Gio’s Pizza, Oliver H. Van Horn Co. Inc., the owner of the premises, and two insurers, Continental and Zurich-American. After a trial on the merits, the jury awarded special damages in the amount of $16,757.59 for medical bills and lost wages, and $10,-000.00 in general damages. Thomas Makin, plaintiff herein, brings this appeal seeking an increase in general damages.[1] Defendants, Oliver H. Van Horn Co. Inc. and Zurich-American Insurance Company, answered the appeal seeking amendment of the judgment to allow the accrual of interest on expert witness fees taxed as court costs from the date of judgment, rather than from the date of judicial demand.
^Testimony in this designated record consists of testimony of the plaintiff and Dr. Marshall Book, an orthopaedic surgeon, who treated Mr. Makin after the injury. Mr. Makin testified that he went to Gio’s Pizza during the early evening hours of August 16, 1990 to pick up a pizza ordered earlier as dinner for himself and some friends. As he was leaving the restaurant carrying the large pizza box, he pushed open the door with his left arm and stepped forward with his right foot. As he did so, his ankle turned and his leg buckled causing him to fall on his right knee. Since he was unable to get up, he “scooted over” to the door to seek help. He was taken by ambulance to East Jefferson Hospital emergency room. Photographs introduced into evidence show that a small concrete ramp was constructed in front of the door causing an irregular slope from the curb to the parking lot.
Dr. Book testified that he saw Mr. Makin on the day after the accident at East Jefferson Hospital. Dr. Book opined that the plaintiff had a “crash injury” to the patella resulting in a comminuted fracture in which the patella broke into two major bone pieces and many small fragments, requiring immediate surgery. Dr. Book explained that during surgery the small comminuted bone pieces were excised and any fragments that may have entered the joints were cleaned out. Then the two major bone fragments were brought together with two smooth pins placed across the fracture site. Afterward, an eighteen gauge wire was encircled around the bone fragments and specifically around the pins. This was done to generate a compression force which is needed because of the tremendous distraction forces on the proximal fragment by the quadriceps muscle.
Dr. Book also testified that he performed a second surgery to remove the hardware from Mr. Makin’s knee. This surgery became *462 necessary because, as Mr. Makin returned to work about two months after the first surgery and began using his knee, the hardware migrated. Dr. Book testified that such migration did cause pain and swelling in the knee, but was not surprising under the circumstances. He also stated that the surgery to remove the | shardware was a less traumatic surgery than the first one. Dr. Book stated that the damage was confined to the patella and there was no evidence of soft tissue damage. Dr. Book testified that he was unable to project exactly what, if any, residual impairment Mr. Makin had because he had not returned to Dr. Book’s office for reassessment of the problem. He did state that the residual problem generally would be a restriction or limitation on the range of motion.
Mr. Makin testified that he returned to his job offshore on October 19, 1990 and that shortly afterward his knee began to hurt and swell. He returned to Dr. Book for the second surgery. After the healing process from that surgery Mr. Makin indicated that he was working again and that he was able to play golf and exercise normally, although he occasionally experienced a “stiffness” in his knee. He testified that he did not return to Dr. Book to have the stitches removed because a friend, who is a nurse, removed them.
As previously stated, the only issues on appeal are the amount of general damages and the date on which interest should accrue on the award of expert witness fees. As to the award of general damages, we are bound by the mandate in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). In that case at 1260-61, the Supreme Court restated the standard for review of general damages as follows:
In Reck [v. Stevens, 373 So.2d 498 (La.1979) ], this court disapproved the appellate court’s simply reviewing the medical evidence and then concluding that the award for those injuries was excessive, without taking into consideration the particular effect on the particular plaintiff. This court further disapproved of the use of a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular ease. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the “much discretion” of the trier of fact. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indem. Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Biotun [Bitoun] v. Land [Landry], 302 So.2d 278 (La.1974); Spillers v. Montgomery Ward & Co., 294 So.2d 803 (La.1974).
We are mindful of the vast discretion afforded the trier of fact as a result of that case. However, in this matter we find that the jury abused its discretion in awarding this plaintiff only $10.000.00 in general damages. The facts of this case show that this plaintiff underwent two surgeries and suffered the loss of about one-third of his kneecap. Despite this serious injury, the plaintiff returned to work only two months after the accident. We believe the evidence shows that the remarkable recovery made in this case was due as much to the strength of resolve of the plaintiff as to the excellent medical care he received. We find that, given the circumstances of this case, the award of $10,000.00 is inadequate. Accordingly, we amend the judgment to award the plaintiff $20,000.00 in general damages.[2]
Defendants argue that the legal interest on expert witness fees should accrue from the time of judgment, not from demand. We agree. See, Cajun Elec. v. Owens-Coming *463 Fiberglass, 616 So.2d 645 (La.1993). Plaintiff argues that we should not apply Cajun since this suit sounds in tort rather that in contract. We find that the rule in Cajun applies regardless of the nature of the underlying suit.
For the foregoing reasons we amend the trial court judgment to award the plaintiff $20,000.00 in general damages and to award Isinterest on expert witness fees from date of judgment. In all other respects the judgment is affirmed.
AMENDED, AND AS AMENDED, AFFIRMED.

. The appeal is actually from an amended judgment rendered April 23, 1993. Although this record is designated and is not complete, it appears that the amended judgment was rendered pursuant to a new trial motion filed by the defendants seeking inclusion of the allocations of fault regarding each of the parties in accordance with the verdict of the jury. The judgment also denied plaintiff's motion for Judgment Notwithstanding the Verdict on the issue of adequacy of the general damage award.

. See, Powell v. A. Copeland Enterprises, Inc., 508 So.2d 849 (La.App. 5th Cir.1987); Jones v. Sampey Bros. General Construction, 544 So.2d 1192 (La.App. 5th Cir.1989).